652

BAIRD ET AL., APPELLEES, *v.* SICKLER, M.D., APPELLANT.

[Cite as Baird v. Sickler (1982), 69 Ohio St. 2d 652.]

(No. 81-471—Decided March 9, 1982.)

*Mr. William J. Ahern,* for appellees.

*Messrs. Crabbe, Brown, Jones, Potts & Schmidt, Mr. William L. Schmidt* and *Mr. Theodore D. Sawyer,* for appellant.

*Per Curiam.* This cause presents a novel question in Ohio: is a chief surgeon ever legally accountable for the negligence of an assisting nurse-anesthetist, not directly employed by him? If an operating physician may never be held liable in such a factual context, then the trial court in the instant case acted properly in directing a verdict in favor of the appellant, Dr. Sickler. We find, however, that a chief surgeon's immunity for the negligent acts of an assisting nurse-anesthetist is not a matter of law and, thus, that the trial court erred in directing the verdict.

Civ. R. 50(A)(4) asserts the test to be followed in ruling on a motion for a directed verdict. Civ. R. 50(A)(4) states:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

No question exists that appellant's motion for a directed verdict was properly made.* Consequently, the appropriate-

---

* Appellant moved for a directed verdict at the close of appellees' evidence, and in the motion appellant specifically stated the bases for the motion, thus complying with Civ. R. 50(A)(1) and (3).

ness of the directed verdict must be determined by appraising the trial court's conclusion that, since the evidence proffered at trial tended to show only the negligence of the nurse-anesthetist and since the nurse was not an employee of Dr. Sickler, appellant was liable neither for his own acts nor those of the nurse, and, thus, was entitled to a directed verdict as a matter of law. We find, however, evidence that appellant may, under the doctrine of *respondeat superior,* indeed be liable for the alleged negligence of the nurse-anesthetist who assisted him during the operation.

Under the doctrine of *respondeat superior,* the "master" is liable for the negligence of his "servant" when the latter is engaged in performing the work of the former. *Mider* v. *United States* (C.A. 6, 1963), 322 F. 2d 193; *Van Meter* v. *Pub. Util. Comm.* (1956), 165 Ohio St. 391. A master-servant relationship is extant only when one party exercises the right of control over the actions of another and those actions are directed toward the attainment of an objective which the former seeks. *Bobik* v. *Indus. Comm.* (1946), 146 Ohio St. 187; *Duke* v. *Sanymetal Products Co.* (1972), 31 Ohio App. 2d 78. For the relationship to exist, it is unnecessary that such right of control be exercised; it is sufficient that the right merely exists. *Pickens & Plummer* v. *Diecker & Brother* (1871), 21 Ohio St. 212.

All requisite indices of the master-servant diad were present in the relationship between appellant Dr. Sickler and J. A. Nichol, the nurse-anesthetist who assisted him. That appellant exercised and possessed the right to control Nichol's actions is reflected in appellant's own testimony at trial. Dr. Sickler admitted that, before the intubation, he instructed Nichol as to the procedures he wished to follow because of appellee Baird's special condition. He stated that, during the intubation, he watched to ensure that Nichol did not hyperflex or hyperextend appellee's neck and admitted that had he observed any misfeasance in the conduct of the intubation, he would have possessed the right and duty to halt the procedure. Appellant testified that, following the intubation, he held appellee's head as she was turned and placed on the operating table and monitored her positioning to ensure that neither her airway nor eyes were compromised. Appellant, clearly, not only con-

trolled but also participated in the administering of the anesthetic. Moreover, even if he had failed to exercise control over the intubation, he clearly, as he himself admitted, had the right to control it.

Appellant contends that the doctrine of *respondeat superior* is inapplicable to the present case because Nichol, the nurse-anesthetist, was an employee and servant of Anesthesia Associates, not of Dr. Sickler. The loaned servant rule, however, compels us to reject this argument. As the court stated in *Halkias* v. *Wilkoff Co.* (1943), 141 Ohio St. 139, at 151 (quoting 35 American Jurisprudence 970, Section 541):

"Indeed, as a general proposition, if one person lends his servant to another for a particular employment, the servant, for anything done in that employment, is dealt with as the servant of the one to whom he has been lent * * * ." Furthermore, it is of no legal import that the party who lent the servant continues to pay him as long as the "borrowing" party controls the servant as to the work to be performed. *Halkias* v. *Wilkoff Co., supra,* at 153.

Appellant finally argues that the Court of Appeals' decision in the instant case resurrects the now abjectly discredited "captain of the ship" doctrine which held a chief surgeon responsible for all that transpires in the operating room. Our ruling, which affirms the appellate court's determination, in no way breathes new life into that now prostrate doctrine. We make no attempt to impose upon an operating physician the duty of overseeing all that occurs in the highly technical milieu in which he works. Instead, we seek only to ensure that where, in the operating room, a surgeon does control or realistically possesses the right to control events and procedures, he does so with a high degree of care.

Because of the existence of other grounds for our decision, the court does not address the issue of the proper interpretation of R. C. 4731.35 raised by both parties.

Accordingly, we affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

CELEBREZZE, C. J., LOCHER and C. BROWN, JJ., concur.

W. BROWN, J., concurs in the judgment.

SWEENEY, HOLMES and KRUPANSKY, JJ., dissent.

WILLIAM B. BROWN, J., concurring in the judgment only. The majority opinion creates an agency relationship in this case and thereby reaches the conclusion that the chief surgeon is vicariously liable for the negligence of a nurse anesthetist. In so reasoning, the majority overlooks R. C. 4731.35, which I believe to provide the proper basis for deciding this case.

R. C. 4731.35 provides: "Sections 4731.01 to 4731.47, inclusive, of the Revised Code shall not apply to or prohibit in any way the administration of an anaesthetic by a registered nurse *under the direction of and in the immediate presence of a licensed physician,* provided such nurse has taken a prescribed course in anaesthesia, at a hospital in good standing." (Emphasis added.) The plain language of this section permits a nurse anesthetist to administer an anesthetic provided she does so only "under the direction" of a physician, thus placing control of the nurse anesthetist in the supervising physician. This section creates a necessary relationship between the physician and nurse anesthetist similar to master-servant, and provides a statutory basis for vicarious liability in the physician.

It was neither necessary or advisable to search beyond R. C. 4731.35 for a basis for vicarious liability in the surgeon. The rule as enunciated by the majority would not be restricted logically to the surgeon-nurse anesthetist relationship, but could be extended to anyone in the operating room over whom the chief surgeon has the right to control. This is nothing more than a resurrection of the "captain of this ship doctrine," since realistically the chief surgeon controls all those who assist him in the operating room. Moreover, there is no reason why this case should be decided with such a broad sweep, when a narrower statutory basis exists. Since the General Assembly has chosen to legislate regarding the surgeon-nurse anesthetist relationship, it is incumbent upon us to apply the statute to this case, and, had we done so, we need not have ruled beyond the scope of that particular relationship.

HOLMES, J., dissenting. I cannot agree with either the rationale of this court or that of the Court of Appeals, so I

strongly dissent from this court's radical departure from prior Ohio law.

Turning first to the rationale adopted by the majority here, it must first be pointed out that appellant Sickler is not being charged with any independent breach of duty on his own part. Rather, the appellees sought to hold the appellant vicariously liable for the asserted negligence of the nurse-anesthetist on the basis of *respondeat superior*.

In my view, the trial court was correct in holding that appellant was, as a matter of law, not vicariously liable for the nurse-anesthetist's negligence. She, the nurse-anesthetist, is not an employee of Dr. Sickler nor an employee of the hospital in which the surgery was taking place. Rather, she is an employee of Anesthesia Associates, an independent contractor with whom the hospital contracts to provide anesthesia services. Dr. Sickler did not direct or control or supervise her in the process of administering the anesthesia. He simply stood by and watched her do it to make certain that she did not hyperflex or hyperextend the neck to compromise his part of the process. He neither directed her how to do it nor told her the techniques because "[s]he knows far more about it than I do." Although he had the right to tell her if he had seen it not being done properly, he basically just stood by as he had every right to do, unless he observed the anesthetist using a questionable technique.

Next, I turn to the contention that R. C. 4731.35 provides a basis for imposing liability upon the appellant. R. C. 4731.35 reads:

"Sections 4731.01 to 4731.47, inclusive, of the Revised Code shall not apply to or prohibit in any way the administration of an anaesthetic by a registered nurse under the direction of and in the immediate presence of a licensed physician, provided such nurse has taken a prescribed course in anaesthesia, at a hospital in good standing."

In my opinion this section does not impose duties of supervision upon a surgeon, nor does it create a relationship between a surgeon and a nurse-anesthetist which could serve to hold the appellant vicariously liable. Rather, it provides the nurse-anesthetist with an exemption from the prohibitions in R. C. 4731.01 to 4731.47 inclusive. That a nurse-anesthetist

can administer anesthetic only "under the direction of and in the immediate presence of a licensed physician" is a condition precedent to the nurse-anesthetist's exemption.

Accordingly, I would reverse the judgment of the Court of Appeals.

SWEENEY, J., concurs in the foregoing dissenting opinion.