KUHN, Appellant,

v.

YOULTEN et al.; Winterhurst Skating Club et al., Appellees.

[Cite as *Kuhn v. Youlten* (1997), 118 Ohio App.3d 168.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70113.

Decided Feb. 10, 1997.

*Thomas G. Lobe,* for appellant.

*Richard B. Gemperline* and *Jeffrey R. Sadlowski,* for appellee Lakewood City School District.

*Reminger & Reminger* and *George Coakley,* for appellee Winterhurst Skating Club.

*Roger D. Tibbetts* and *Denis P. Dunn,* for appellee city of Lakewood.

---

SARA J. HARPER, Judge.

Plaintiff-appellant, Dan L. Kuhn ("Kuhn"), appeals from the trial court order granting summary judgment in favor of Winterhurst Figure Skating Club, Inc. ("Winterhurst Club"), the city of Lakewood ("Lakewood"), the city of Lakewood Board of Education and Recreation Department ("Lakewood Board"), Bernard Youlten ("Youlten"), and Margaret Youlten ("Ms. Youlten").[1] Kuhn submits that the trial court erred in granting summary judgment as genuine issues of material fact remain for litigation. A careful review of the record compels affirmance.

---

1. Bernard Youlten and Margaret Youlten are not parties to this appeal.

Winterhurst Club is a nonprofit skating organization that rents ice time, at an hourly rate, at the skating facility in Lakewood, Ohio, known as Winterhurst Ice Rink ("Winterhurst Rink"). Lakewood owned Winterhurst Rink up until 1975. In October 1975, Lakewood relinquished control of Winterhurst Rink and entered into an agreement with Lakewood Board. As a result of the agreement between Lakewood Board and Lakewood, Lakewood Board agreed to assume full and complete control, maintenance, and operation of Winterhurst Rink.

In 1982, Youlten was recruited by Winterhurst Club. He signed a one-year contract and became a skating instructor at Winterhurst Rink. The contract between Winterhurst Club and Youlten required Youlten to perform a specified number of hours of volunteer work and to provide group lessons. It also authorized Youlten to tutor Winterhurst Club members privately. Finally, a contract provision between Winterhurst Club and Youlten specified the type of relationship between Winterhurst Club and Youlten. The provision reads:

"Parties do hereby agree that the 'Professional' (Youlten) is an *independent contractor* responsible for his or her own Social Security and Income Taxes and he is not an employee of the 'Club.' " (Emphasis added.)

Youlten's contract was renewed yearly with Winterhurst Club through May 31, 1992, and the terms of the contract remained the same from year to year.

Youlten also signed a contract with Lakewood Board. The contract did not cover ice skating instructions. Lakewood Board contracted directly with the families of young people to give such lessons, which required Youlten to open and close Winterhurst Rink.

In 1986, Kuhn, who was thirteen years of age at the time, became a member of Winterhurst Club. He, thereafter, entered into a verbal contract with Youlten whereby Youlten agreed to be Kuhn's private skating instructor. Youlten coached Kuhn from 1987 to 1990. Soon after his skating lessons commenced, Youlten initiated sexual contact with Kuhn. The sexual contact continued until late 1991.

In July 1992, Kuhn confided to a Winterhurst Club staff professional that Youlten had engaged in sexual contact with him. Lakewood Board immediately terminated Youlten.

The Lakewood Police Department initiated a police investigation. Subsequently, Youlten was indicted by a Cuyahoga County Grand Jury on multiple sex offenses as a result of these incidents. Youlten pled guilty and was sentenced to Hocking Correctional Institute.

On September 15, 1993, Kuhn filed a multiple-count complaint against Lakewood, Lakewood Board, and Winterhurst Club. With respect to Winterhurst Club, Kuhn alleged negligent hiring and supervision, negligent maintenance of its

premises at the Winterhurst Rink, premises liability, and liability under the doctrine of *respondeat superior*. As to Lakewood Board, Kuhn alleged negligent hiring and supervision of Kuhn and negligent maintenance of the premises. Kuhn alleged the same causes of action against Lakewood.

Lakewood, Lakewood Board, and Winterhurst Club filed motions for summary judgment, which were opposed by Kuhn. Nonetheless, the trial court granted summary judgment in favor of the defendants. Kuhn timely appeals and presents the following assignment of error for this court to review:

"The trial court erred to the prejudice of the appellant by granting each appellee's motion for summary judgment as genuine issues of material fact exist, no appellee is entitled to judgment as a matter of law, and reasonable minds cannot come to but one conclusion which is adverse to the appellant."

In his sole assignment of error, Kuhn attacks the trial court's order granting summary judgment in favor of Winterhurst Club, Lakewood, and Lakewood Board. Kuhn submits that genuine issues of material fact remain for litigation. He first challenges the trial court's ruling as to whether a duty of care was breached under the theories of premises liability, negligent hiring and supervision. He further asserts there are existence of genuine issues of material fact with respect to vicarious liability under the doctrine of *respondeat superior*.

Under Civ.R. 56, summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1098–1099; *Celotex, supra*, at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 272–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

This court reviews the lower court's granting of summary judgment *de novo*. *Brown v. Scioto Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination.") An appellate court reviewing a grant of summary judgment must follow the standards set forth in Civ.R. 56(C):

"The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26.

In order to defeat a motion for summary judgment in a negligence action, the plaintiff must identify a duty owed to him by the defendant. *Keister v. Park Centre Lanes* (1981), 3 Ohio App.3d 19, 3 OBR 20, 443 N.E.2d 532. This evidence, construed most strongly in the plaintiff's favor, must be sufficient to allow reasonable minds to infer that a specific duty was breached, the breach was the proximate cause of the plaintiff's injury, and the plaintiff sustained an injury. *Id.* at 22, 3 OBR at 23–24, 443 N.E.2d at 534.

In Ohio, it is well established that "an occupier of a premises for business purposes is not an insurer of the safety of his business invitees while they are on the premises." *Howard v. Rogers* (1969), 19 Ohio St.2d 42, 47, 48 O.O.2d 52, 55, 249 N.E.2d 804, 807. The duty owed to an invitee is the exercise of ordinary or reasonable care for the invitee's safety and protection. *Scheibel v. Lipton* (1951), 156 Ohio St. 308, 310, 46 O.O. 177, 178, 102 N.E.2d 453, 454–455. The duty owed is one of reasonable care. *Patete v. Benko* (1986), 29 Ohio App.3d 325, 29 OBR 452, 505 N.E.2d 647. While the owner or possessor of the premises is not held as an insurer against all forms of risks, such entity must protect the invitee from unreasonable risks of harm of which the entity knows or should have known. *Cornell v. Aquamarine Lodge* (1983), 12 Ohio App.3d 148, 149, 12 OBR 471, 472–473, 467 N.E.2d 896, 896–897. Constructive knowledge can be proven with a factual basis that the hazard existed for a sufficient period of time to enable the exercise of ordinary care. *Worley v. Cleveland Pub. Power* (1991), 77 Ohio App.3d 51, 601 N.E.2d 80.

The existence of a duty to protect invitees depends upon the foreseeability of the harm, *i.e.*, whether the defendant should reasonably have known and anticipated the act of the person which resulted in the injuries sustained by the plaintiff. *Montgomery v. Young Men's Christian Assn.* (1987), 40 Ohio App.3d 56, 531 N.E.2d 731. The existence of a duty depends on the foreseeability of the harm. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707. Where there is no legal duty, no liability can arise. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 539 N.E.2d 614.

In order to set forth an attainable claim for negligent hiring, a plaintiff must establish, at a minimum, that the employer knew, or should have known, of the employee's criminal or tortious propensities. *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584; *Stephens v. A–Able Rents Co.* (1995), 101 Ohio App.3d 20, 654 N.E.2d 1315. The mere allegation that the employer had the required knowledge of the employee's criminal or tortious propensities, without more, is not enough for a plaintiff to survive a motion for summary judgment. *Byrd, supra,* at 58, 565 N.E.2d at 587.

In order to establish a claim under the doctrine of *respondeat superior,* it must be demonstrated that a principal-agent relationship existed and that the tortious conduct was committed by the agent while in the scope of his agency. *Baird v. Sickler* (1982), 69 Ohio St.2d 652, 23 O.O.3d 532, 433 N.E.2d 593. To determine whether an employer-employee or an independent contractor relationship exists, the key factual inquiry is who had the right to control the manner or means of performing the work. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph one of the syllabus. To make this determination, a court should consider who controls the details and quality of the work, the hours of employment, the method and amount of payments, and the agreement between the parties. *Id.* at 146, 524 N.E.2d at 883–884.

In order for an employer to be held liable under the doctrine of *respondeat superior,* the tort of the employee must be committed within the scope of employment. In addition, where the tort is intentional, the behavior giving rise to the tort must be calculated to further and/or promote the business. *Byrd, supra,* at 58, 565 N.E.2d at 587.

With the appropriate rule of law set forth, we now analyze the arguments raised in Kuhn's appeal to determine whether the trial court erred when it granted summary judgment in favor of Lakewood Board, Winterhurst Club, and Lakewood.

As this is an appeal from a summary judgment, the first inquiry is whether Kuhn presented evidence demonstrating genuine issues of material fact with respect to Lakewood Board's liability under premises liability, negligent hiring and *respondeat superior.*

Kuhn first alleges that Lakewood Board was negligent in that it failed to exercise ordinary and reasonable care for his safety as an invitee. The extent of duty owed by a defendant to a plaintiff depends upon the relationship between the defendant and plaintiff and the foreseeability of the injury to someone in the plaintiff's position. *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 556 N.E.2d 505.

Kuhn failed to offer evidence to demonstrate that Lakewood Board breached a duty to exercise ordinary and reasonable care and could have reasonably foreseen Youlten's sexual molestation of him. No evidence was presented by Kuhn to show that the Lakewood Board had knowledge of the sexual contact between Youlten and Kuhn. Both Kuhn and Youlten averred that all sexual contact occurred in private. Moreover, they did not disclose to anyone the nature of the sexual contact between them. Finally, the Lakewood Board could not have reasonably anticipated Youlten's sexual contact with Kuhn as Lakewood Board did not know about the sexual contact until months after the contact had ceased. Thus, Kuhn failed to present evidence to permit reasonable minds to infer that a duty was breached in that Lakewood Board should reasonably have known or anticipated Youlten's sexual molestation of Kuhn.

■ Second, Kuhn charged that the trial court erred when it granted summary judgment on his claim of negligent hiring. Specifically, Kuhn asserted that Lakewood Board had a duty to investigate Youlten's criminal background. Kuhn, pursuant to Civ.R. 56, had the burden of producing evidence demonstrating a genuine issue of material fact, and failed to do so.

A cognizable claim of negligent hiring exists if a plaintiff establishes, at a minimum, that the employer knew or should have known of the employee's criminal or tortious propensity. *Byrd, supra,* 57 Ohio St.3d at 61, 565 N.E.2d at 590. Kuhn has failed to cite authority to support his proposition of law that Lakewood Board had a duty, as Youlten's employer, to institute a prehiring investigation of Youlten's criminal background. Kuhn also has not presented evidence demonstrating that, even if a prehiring investigation was completed, Lakewood Board should have known of Youlten's propensity. Here, Youlten did not have a criminal background regarding this type of act or any other illegal activity.

■ Finally, Kuhn's contention that a genuine issue of material fact remains for litigation relative to Lakewood Board's vicarious liability for Youlten's sexual molestation of Kuhn under the doctrine of *respondeat superior* is not supported by the evidence before this court. A principal-agent relationship did not exist between Kuhn and Lakewood, as evidenced by the fact that Lakewood Board hired Youlten to open Winterhurst Rink and to facilitate ice skating shows with Winterhurst Club. His employment responsibilities did not include providing skating lessons to anyone. Even if principal/agent relations did exist, Kuhn has not presented evidence that Youlten's sexual molestation facilitated or promoted Lakewood Board's business. Youlten's sexual molestation of Kuhn did not fall within the scope of his employment with Lakewood Board. There is no presumption that the wrongful or criminal acts of an agent or employee constitute the act of the principal; rather, authority to do the act must be demonstrated, or

ratification of the act by the principal must be shown. *Finley v. Schuett* (1982), 8 Ohio App.3d 38, 8 OBR 41, 455 N.E.2d 1324. Given the foregoing, the trial court correctly granted summary judgment in favor of Lakewood Board.

Turning to Winterhurst Club, Kuhn alleged premises liability, negligent hiring and supervision, and negligent maintenance liability under the doctrine of *respondeat superior.*

Kuhn has the burden of producing evidence demonstrating that a genuine issue of material fact remains for litigation with respect to Winterhurst Club's liability under the theory of premises liability. *Wing.* As stated, to be held liable under this theory, a plaintiff must establish that the defendant was an owner and/or occupier of the premises. *Howard, supra.* Kuhn has the burden of producing evidence demonstrating that Winterhurst Club was an occupier/owner of Winterhurst Rink, as this is a summary judgment proceeding. As stated, the record before this court indicates that Lakewood relinquished control of Winterhurst rink in 1975 and Lakewood Board assumed full and complete control of the rink. By agreement, Winterhurst Club rented ice time at Winterhurst Rink at an hourly rate. Thus, there is no genuine issue of material fact with respect to Winterhurst Club owning Winterhurst Rink.

Assuming *arguendo* that Winterhurst Club is deemed an occupier of Winterhurst Rink, Kuhn still failed to satisfy his burden of production by demonstrating that Winterhurst Club negligently maintained the Winterhurst Rink.

As stated, an occupier of a business premises has a duty to protect invitees from criminal acts when there is evidence that the occupier should have reasonably known or anticipated that a third party was likely to cause injury. *Howard, Menifee,* and *Montgomery, supra.*

The evidence in the case *sub judice* shows that Winterhurst Club did not have prior knowledge of Youlten's criminal propensity; therefore, Winterhurst Club could not have reasonably anticipated Youlten's sexual molestation of Kuhn. Here, Kuhn did not disclose the sexual contacts between himself and Youlten to Winterhurst Club professionals for six to eight months after the last sexual contact. Both Kuhn and Youlten averred that neither of them told anyone of the sexual contacts. Youlten admitted, and Kuhn confirmed, that Youlten took specific measures to ensure that no one witnessed the sexual contact between himself and Kuhn. Given the foregoing, Kuhn failed to present evidence demonstrating that a genuine issue of material fact existed with regard to whether Winterhurst Club reasonably knew or should have known of Youlten's criminal propensity.

■ Turning to Kuhn's complaint that Winterhurst Club negligently hired Youlten, Kuhn failed to present evidence that Winterhurst Club knew or should have known of Youlten's criminal or tortious propensity. Moreover, Kuhn demonstrates no issue of fact as to whether anyone knew of the sexual relationship between Kuhn and Youlten prior to his revealing the involvement. Thus, Kuhn's contention is not well taken.

■ Also, Kuhn asserts that Winterhurst Club should be held vicariously liable for Youlten's conduct, under the doctrine of *respondeat superior*. As stated, a plaintiff must demonstrate that a principal-agent relationship exists and that tortious conduct was committed by the agent while in the scope of his agency. *Baird, supra.*

A principal-agent relationship did not exist between Youlten and Winterhurst Club. The record demonstrates that an independent contractor relationship existed between Winterhurst Club and Youlten as evidenced by the contractual language between Winterhurst Club and Youlten. Youlten, in turn, privately contracted with skaters to provide ice skating lessons. Winterhurst Club did not control Youlten's right to contract with students. Moreover, Winterhurst Club did not control or have the right to control activities between Kuhn and Youlten. Youlten confirmed that he understood that the relationship between Winterhurst Club and himself was that of independent contractor. From the foregoing, Kuhn has not presented evidence demonstrating a genuine issue of material fact regarding Youlten's status as an independent contractor and not an employee of Winterhurst Club. Thus, the trial court did not err when it granted summary judgment in favor of Winterhurst Club.

■ Turning to Lakewood, Kuhn charged that Lakewood should be held liable under theories of premises liability and *respondeat superior*.

A party opposing summary judgment bears the responsibility of demonstrating a genuine issue of material fact. *Chaney.* Lakewood, as a result of an agreement in 1977, relinquished control of Winterhurst Rink; thus, Lakewood was neither an occupier nor an owner of Winterhurst Rink. Kuhn failed to present evidence that Lakewood was an occupier/owner of Winterhurst Rink; thus, Kuhn did not present evidence demonstrating a genuine issue of material fact relating to Lakewood's liability under the theory of premises liability.

■ Kuhn also charged that Lakewood should be held vicariously liable under the doctrine of *respondeat superior*. Youlten did not have an employer-employee relationship with Lakewood. Youlten had contracts only with Winterhurst Club and Lakewood Board. Kuhn failed to present evidence demonstrating a genuine issue of material fact with respect to Lakewood's vicarious liability under the doctrine of *respondeat superior*.

Given the foregoing, the trial court did not err when it granted summary judgment in favor of Lakewood.

*Judgment affirmed.*

PATRICIA A. BLACKMON, P.J., and PORTER, J., concur.