OPINION
On September 22, 1997, Judith A. Groner, M.D., filed a complaint in the Franklin County Court of Common Pleas against Raymond M. deLevie, Alvin F. deLevie Associates and deLevie and Jaffe. Mr. deLevie is an attorney and received a medical degree in 1991. Dr. Groner and Mr. deLevie were married in 1986, had one child and were divorced in 1992. Dr. Groner received full custody of their child, and Mr. deLevie was ordered to pay modest child support. Mr. deLevie appealed the domestic court's decision to this court and we affirmed. Soon thereafter, Mr. deLevie began certain post-decree proceedings seeking modifications to visitation and child support orders.
According to the complaint herein, Mr. deLevie engaged in repeated abuses of the legal process solely for the purpose of harassing and damaging Dr. Groner and her family and used his law license as a means to emotionally abuse her and needlessly prolong litigation, causing her to incur exorbitant legal fees. Dr. Groner further averred that Mr. deLevie went to significant lengths to interfere with her ability to lead a normal life by serving her with dozens of subpoenas and other legal papers and by harassing her lawyers, therapists and physicians.
The complaint set forth claims for relief of abuse of process, intentional infliction of emotional distress, and breach of contract. Dr. Groner also set forth a claim of respondeat superior liability against Alvin F. deLevie Associates and deLevie Jaffe. Alvin F. deLevie Associates and deLevie Jaffe were law firms based in Philadelphia, Pennsylvania. Mr. deLevie's brother, Alvin F. deLevie, is an attorney licensed in Pennsylvania and was the sole proprietor of Alvin F. deLevie Associates. deLevie Jaffe was a law partnership formed by Alvin deLevie and Daniel M. Jaffe. Dr. Groner averred that Mr. deLevie's unlawful acts were committed while he was an employee/agent of the law firms and while in the scope of such employment/agency.
On October 20, 1997, Dr. Groner amended her complaint to add Alvin F. deLevie and Daniel M. Jaffe as defendants. In addition, she set forth two new claims of stalking and partnership liability. Dr. Groner averred that her ex-husband was a partner in Alvin F. deLevie Associates and deLevie Jaffe and was acting on behalf of such firms. Dr. Groner averred, therefore, that Alvin deLevie and Mr. Jaffe were jointly and severally liable for any damages arising out of Raymond deLevie's wrongful actions.
The defendants filed separate answers and counterclaims to the first amended complaint. The counterclaims alleged frivolous conduct in violation of R.C. 2323.51 and Civ.R. 11, and abuse of process.[1] The defendants averred that discovery showed that Raymond deLevie served only as an independent contractor to the law firms and, therefore, the complaint against the firms and Alvin deLevie and Mr. Jaffe were without any basis.
On May 13, 1998, Alvin F. deLevie Associates, deLevie Jaffe, Alvin deLevie and Mr. Jaffe (hereinafter collectively referred to as the "Philadelphia defendants") filed a motion for summary judgment. In essence, the Philadelphia defendants contended there was no basis for liability on their part because Raymond deLevie was not an employee of the law firms, worked for the firms only as an independent contractor or in an "of counsel" capacity on a project-by-project basis, and had never acted in the law firms' interest while engaging in his domestic dispute with Dr. Groner.
On October 16, 1998, Dr. Groner filed a motion for leave to amend the complaint in order to add claims of negligent hiring and supervision. This motion was granted on July 26, 1999.
On August 20, 1999, the Philadelphia defendants filed a supplement to their motion for summary judgment, contending they were not liable under a theory of negligent hiring or supervision. Dr. Groner filed a memorandum contra, the Philadelphia defendants filed a reply, and Dr. Groner filed a surreply.
On September 15, 2000, the trial court rendered a decision granting the Philadelphia defendants' motion for summary judgment. A judgment entry was journalized on October 3, 2000, finding no just reason for delay pursuant to Civ.R. 54(B). Dr. Groner (hereinafter "appellant") has appealed to this court, assigning the following as error:
 1. The trial court erred as a matter of law when it granted summary judgment in favor of defendants-appellees Daniel M. Jaffe, Alvin F. deLevie, deLevie Jaffe, and Alvin F. deLevie 
Associates.
 2. The trial court erred as a matter of law when it ruled that an employer is only vicariously liable for the intentional torts of an employee if the employer hires the employee for the specific purpose of committing the intentional tort, and only if the intentional tort is specifically intended to benefit the employer.
 3. The trial court erred when it ruled that plaintiff-appellant presented no evidence from which a jury could conclude that Ray deLevie's actions might have benefited defendants-appellees Daniel M Jaffe, Alvin F. deLevie, deLevie Jaffe, and Alvin F. deLevie Associates in any way.
 4. The trial court erred when it granted summary judgment on appellant's claims for negligent hiring and supervision.
 5. The trial court erred as a matter of law when it ruled that liability for negligent hiring or supervision depends upon evidence that the employee could not have committed the intentional tort but for the fact that he was an employee.
 6. The trial court erred when it granted summary judgment in favor of defendants-appellees Daniel M. Jaffe, Alvin F. deLevie, deLevie Jaffe, and Alvin F. deLevie Associates, despite the fact that they are liable under the law of partnership.
 7. The trial court erred when it granted summary judgment without considering all the legal bases for a liability finding presented by plaintiff.
 8. The trial court erred as a matter of law when it implicitly ruled that defendants-appellees had not ratified the tortious actions of their employee.
All of appellant's assignments of error address the trial court's granting of summary judgment in favor the Philadelphia defendants (hereinafter "appellees"). Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, paragraph three of the syllabus. Appellant sets forth several contentions with regard to the trial court's application of the law to the facts. We note that we give no deference to the trial court's decision, and our review of the appropriateness of summary judgment is de novo. See Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
As they are interrelated, we address appellant's first, second and third assignments of error together. In essence, appellant contends there is a genuine issue of fact as to whether appellees could be held liable under the doctrine of respondeat superior for Raymond deLevie's alleged tortious conduct in maintaining the domestic relations litigation against appellant. Appellant asserts there is evidence that Raymond deLevie was employed by the Philadelphia law firms and that Raymond deLevie's actions were designed to promote the firms' business. Appellees assert they did not participate or assist Raymond deLevie in any way in his domestic litigation against his former spouse. Appellees contend Raymond deLevie was not an employee of the firms but was hired as a consultant because of his medical degree, and the sole purpose of deLevie Jaffe was to practice medical malpractice law. Appellees contend there is no evidence that Raymond deLevie's actions in domestic court against appellant were on behalf of anyone other than himself and his and his child's interests.
By way of background, Raymond deLevie graduated from law school in 1977 and thereafter practiced administrative electric utility law as a government attorney and in private practice in Pennsylvania. Mr. deLevie married appellant, a physician, in 1986 and thereafter attended the Ohio State University Medical School. Appellant worked as a pediatrician at Children's Hospital in Columbus. Mr. deLevie obtained his medical degree in 1991, but he never completed a residency program and was never licensed to practice medicine. Around the time Mr. deLevie and appellant were divorced, in May/June 1992, Mr. deLevie obtained his license to practice law in Ohio.
Mr. deLevie worked as a law clerk and later as an associate in a Columbus law firm, Wolske Blue, in 1992. In December 1992, Mr. deLevie was terminated from his employment at Wolske Blue. Mr. deLevie decided to open his own practice and sought his brother Alvin's advice in this regard.
Alvin deLevie was also an attorney and had been engaged in private practice as a sole practitioner in Pennsylvania. Alvin deLevie shared an office building with Daniel M. Jaffe, who was also a sole practitioner. Alvin deLevie and Mr. Jaffe had formed deLevie Jaffe for the purpose of practicing medical malpractice law. They each maintained their solo practices as well.
Alvin deLevie advised his brother Raymond not to practice out of his home but to have a separate office. Alvin deLevie offered to initially pay the rent on an office space for Raymond. Alvin deLevie also offered to provide Raymond with work on certain medical malpractice projects for deLevie Jaffe. Raymond leased office space on Front Street in Columbus in early February 1993. Another attorney also practiced in the same building. Raymond worked on cases with this attorney as well as other attorneys. He also accepted work from deLevie Jaffe on a project-by-project basis, most of which involved reviewing the medical records in each case. Raymond later moved his office to Gay Street in Columbus and has essentially paid the rent on such space himself.
As to how he was paid for his work for deLevie Jaffe, Alvin would inform Raymond of a project, and Raymond would decide whether or not he would work on it and would indicate how much he would like to be paid for a certain project. Once an agreement was reached, Raymond would be paid for a project prior to completing it. For his work on deLevie Jaffe projects, Raymond has been paid almost exclusively by Alvin F. deLevie 
Associates, and his income from such work was reported each year on an IRS Form 1099 (miscellaneous income).
Appellant contends Raymond deLevie was an employee of appellees and was able to engage in his harassment of her due to his employment with appellees and through the resources and financial support provided by appellees. Appellant asserts appellees are liable for Mr. deLevie's wrongful conduct under the doctrine of respondeat superior. In order for an employer to be liable under respondeat superior, the tort of the employee must be committed within the scope of employment with the employer. Byrd v. Faber (1991), 57 Ohio St.3d 56, 58. Where the tort is intentional, the behavior giving rise to the tort must be calculated to facilitate or promote the business for which the servant was employed. Id. An employer is not liable for independent, self-serving acts of employees which in no way facilitate or promote the employer's business. Id. at 59. An intentional and willful attack committed by an agent or employee, to vent the employee's own spleen or malevolence against the injured person, is a clear departure from employment, and the principal or employer is not liable therefor. Id., quoting Vrabel v. Acri (1952), 156 Ohio St. 467, 474.
However, the willful and malicious character of an employee's act does not always, as a matter of law, remove the act from the scope of employment. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 330. When an employee diverts from the straight and narrow performance of his or her task, the diversion is not an abandonment of his or her responsibility and service to the employer unless the act is so divergent that its very character severs the employer/employee relationship. Id., quoting Wiebold Studio, Inc. v. Old World Restorations, Inc. (1985),19 Ohio App.3d 246, 250.
Whether an employee is acting within the scope of employment is a question of fact to be decided by the jury. Osborne at 330. Only when reasonable minds can come to but one conclusion does the issue of scope of employment become a question of law. Id. For the reasons that follow, we find that summary judgment in favor of appellees was appropriate, as reasonable minds could only conclude that Raymond deLevie's actions against appellant were not performed within the scope of his employment/agency with appellees.
The first issue we must address is whether or not Raymond deLevie was an employee or agent of the Philadelphia law firms. For the purposes of summary judgment, we must construe the evidence in favor of appellant. The evidence establishes that as to certain legal work performed, Mr. deLevie was an employee/agent of the Philadelphia law firms. As indicated above, Mr. deLevie worked on projects for deLevie Jaffe and was paid for such work by Alvin F. deLevie Associates. (Raymond deLevie March 24, 1996 deposition at 155; Raymond deLevie July 16, 1998 deposition at 139-140.) However, Mr. deLevie did not work solely for the Philadelphia law firms. Mr. deLevie was also a sole practitioner who, in addition to and as part of his solo practice, did medical malpractice work with local attorneys as well as for deLevie Jaffe. (Raymond deLevie March 24, 1996 deposition at 57-59, 93, 104-109, 152, 156, 164-165; Raymond deLevie October 14, 1996 deposition at 197; Raymond deLevie July 16, 1998 deposition at 6, 15, 105-109, 118-119, 126-128, 133; Alvin deLevie deposition at 119, 297-298.) Mr. deLevie was paid for his deLevie Jaffe work on a project-by-project basis. (Raymond deLevie March 24, 1996 deposition at 94-95; Raymond deLevie October 14, 1996 deposition at 144, 172; Raymond deLevie July 16, 1998 deposition at 96; Jaffe deposition at 18.)
This evidence establishes that Mr. deLevie was an employee/agent of the Philadelphia firms, but only as to certain work. Clearly, Mr. deLevie engaged in the practice of law either by himself, with the Philadelphia firms or with other local attorneys. He was not always acting as an employee/agent of the Philadelphia firms. Appellant points to evidence that Mr. deLevie received a regular paycheck from Alvin F. deLevie 
Associates for his work for deLevie Jaffe. The evidence shows that for a period in 1993, Mr. deLevie received regular monthly paychecks for his deLevie Jaffe work; however, this was solely for the purpose of obtaining a loan to buy a house and ended by 1994. (Raymond deLevie March 24, 1996 deposition at 69, 95-98, 151-152, 170; Raymond deLevie October 14, 1996 deposition at 143, 162-163; Raymond deLevie July 16, 1998 deposition at 219; Raymond deLevie August 13, 1998 deposition at 602-603; Alvin deLevie deposition at 177.)
Having established that at least in some instances Mr. deLevie was an employee/agent of the Philadelphia law firms, we address the scope of Mr. deLevie's employment with such firms. The scope of Mr. deLevie's employment/agency with the Philadelphia firms involved solely work on medical malpractice cases generated by and through the Philadelphia firms. (Raymond deLevie March 24, 1996 deposition at 93; Raymond deLevie July 16, 1998 deposition at 106, 123; Raymond deLevie August 13, 1998 deposition at 533; Jaffe deposition at 13, 18.) Mr. deLevie's domestic relations practice, as small as it was, was done in his capacity as a sole practitioner, not as an agent/employee of the Philadelphia defendants. (Raymond deLevie July 16, 1998 deposition at 109, 177-180; Raymond deLevie August 7, 1998 deposition at 488-489.)
As to the post-decree litigation against appellant, Mr. deLevie was not acting within the scope of his employment/agency with the Philadelphia firms. Such conduct was not calculated to facilitate or promote the business for which Mr. deLevie was employed by the Philadelphia firms. (Raymond deLevie March 24, 1996 deposition at 93; Raymond deLevie August 13, 1998 deposition at 557-559; Alvin deLevie deposition at 291-292, 371; Jaffe deposition at 7; Raymond deLevie affidavit at record No. 76; Alvin deLevie affidavit at record No. 77.) Alvin deLevie was aware in general of Mr. deLevie's domestic proceedings against appellant. Also, there is some evidence upon which a reasonable juror could infer that Mr. deLevie generated domestic relations business for himself by virtue of his presence in domestic relations court. However, this evidence does not create a genuine issue of fact as to whether the behavior which gave rise to Mr. deLevie's alleged tortious conduct was calculated to facilitate or promote the Philadelphia firm's business.
Rather, Mr. deLevie was "hired" by the Philadelphia firms to work on medical malpractice cases, not domestic relations cases and certainly not a domestic relations case against his former spouse. Mr. deLevie maintained a solo practice separate from his work with the Philadelphia firms, which included limited domestic work. Appellant points to a deLevie Jaffe fax cover sheet used in the post-decree action against her. However, the evidence is that use of this cover sheet in relation to the post-decree action was inadvertent, and the actual letter attached was on Mr. deLevie's own letterhead. (Raymond deLevie August 13, 1998 deposition at 557-559; exhibit No. 12 to appellant's memorandum contra the motion for summary judgment.)
In addition, appellant points to a medical malpractice lawsuit (the Trail case) wherein Mr. deLevie used a medical records authorization baring the name of deLevie Jaffe in order to obtain hospital records from Children's Hospital. Mr. deLevie allegedly mailed an R.C. 2305.11
180-day letter to appellant informing her that the Trails were considering bringing a lawsuit against appellant for professional services provided by her at Children's Hospital. Apparently, appellant never rendered services to the Trails' infant daughter, and the allegation is that Mr. deLevie altered the 180-day letter to add appellant's name. However, the evidence is that Mr. deLevie alone prepared the medical records authorization form. (Raymond deLevie July 16, 1998 deposition at 27-28.) In addition, the Trail case originated in a local Columbus attorney's office, and such attorney directed Mr. deLevie to obtain the hospital records. Id. at 26. Hence, the Trail case had nothing to do with the Philadelphia firms or Mr. deLevie's work therefor.
There is simply no evidence that Mr. deLevie's actions against appellant were in any way designed to facilitate the business of or resulted in a benefit to the Philadelphia firms. Instead, the only inference that can be made is that Mr. deLevie's crusade against appellant was solely a personal, self-serving matter. At best, one could argue that Mr. deLevie engaged in his personal dispute with appellant during business hours — hours in which he may have also and presumably on some occasions worked on deLevie Jaffe projects. However, when Mr. deLevie was working on the case against appellant, it was not work for deLevie Jaffe, Alvin F. deLevie Associates or any other business. It was Mr. deLevie's personal activities. See Caruso v. State (2000), 136 Ohio App.3d 616, 621 (the fact that the conduct constituting the tort was committed while the employee was on duty and supposedly performing services for the employer does not render the employer liable where the employee deviated or departed from the employer's business to engage upon a matter for personal purposes without benefit to the employer). Further, even if we assumed Mr. deLevie was at all times an employee/agent of the Philadelphia firms, his actions against his ex-wife were so divergent from his employment with such firms that any employment relationship was severed.
Given all of the above, there is no genuine issue of material fact as to whether Mr. deLevie's actions against appellant were committed within the scope of his employment/agency with the Philadelphia firms and whether such actions were calculated to facilitate or promote the Philadelphia firms' business. Mr. deLevie's actions were independent, self-serving acts which were clear departures from his employment/agency relationship with the Philadelphia firms. Therefore, summary judgment in favor of appellees on appellant's claim for respondeat superior liability was appropriate.
Accordingly, appellant's first, second and third assignments of error are overruled.
In her fourth and fifth assignments of error, appellant contends summary judgment was inappropriate on her negligent hiring and supervision claims. Negligent hiring/supervision is a recognized tort in Ohio. A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless in the employment of improper persons in work involving risk of harm to others. Evans v. Ohio State Univ. (1996),112 Ohio App.3d 724, 739, quoting the Restatement of the Law 2d, Agency (1958), 458, Section 213. Comment d to the Restatement provides that an agent, although otherwise competent, may be incompetent because of his or her reckless or vicious disposition and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him or her in contact with others while in the performance of a duty, the principal is subject to liability for harm caused by the vicious propensity. Staten v. Ohio Exterminating Co., Inc. (1997), 123 Ohio App.3d 526, 529.
However, one who employs another is not liable under this rule merely because the employee is incompetent, vicious or careless. If liability results, it is because under the circumstances the employer has not taken the care which a prudent person would take in selecting the person for the business at hand. Id. Which precautions must be taken depend on the situation, and one can normally assume that another who will perform simple work is competent. Id. If, however, the work is likely to subject third parties to serious risk of great harm, there is a special duty of investigation. Id.
The elements of negligent hiring have been set forth as: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. Evans at 739. The issue of whether a duty is owed is based upon the foreseeability of the injury — whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. Id. at 740. Indeed, in Byrd, supra, at 61-62, the Supreme Court stated in the context of a negligent hiring claim that there were no facts indicating the employee had a history of criminal or tortious conduct, and there was no evidence that the defendant-church knew or should have known of the employee's criminal or tortious propensities. See, also, Kuhn v. Youlten (1997), 118 Ohio App.3d 168, 176.
In the case at bar, we have already determined that in certain situations, Mr. deLevie was in an employment/agency relationship with the Philadelphia firms. However, we note that as to his proceedings against appellant in domestic court, such conduct was not in the context of such employment/agency relationship. Nonetheless, even if we assumed for the sake of argument that Mr. deLevie was at all times in an agency relationship with the Philadelphia firms, there is no evidence that appellees were aware of any incompetence, viciousness or recklessness on the part of Mr. deLevie.
Alvin deLevie was aware that Mr. deLevie had been fired from Wolske 
Blue. (Alvin deLevie deposition at 29-30; Raymond deLevie July 16, 1998 deposition at 82-83.) However, there is no evidence that appellees were aware or should have been aware of any potential problems with Mr. deLevie. There is no evidence that Mr. deLevie had the propensity to be litigious in any way or had a reckless or vicious personality. In addition, appellees had no knowledge of the substance of and the extent of Mr. deLevie's domestic matters between him and appellant. (Alvin deLevie deposition at 291-292, 371; Jaffe deposition at 7; Alvin deLevie affidavit at record No. 77, Jaffe affidavit at record No. 78; Raymond deLevie affidavit at record No. 76.)[2] The fact that appellant later made Alvin deLevie and Mr. Jaffe parties to the litigation pursuant to Civ.R. 75(B) does not change this fact.[3]
Given all of the above, there was no evidence from which reasonable minds could conclude that appellees were aware or should have been aware of any tortious propensities of Mr. deLevie and/or that the alleged injuries to appellant were foreseeable. Therefore, summary judgment in favor of appellees on the negligent hiring/supervision claim was appropriate.
Accordingly, appellant's fourth and fifth assignments of error are overruled.
In her sixth assignment of error, appellant contends there was evidence that a partnership existed between Alvin deLevie, Mr. Jaffe and Raymond deLevie such that Alvin deLevie and Mr. Jaffe could be liable for Raymond deLevie's alleged tortious behavior. R.C. 1775.12 states that where loss or injury is caused to any person not a partner, by any wrongful act of any partner acting in the ordinary course of the business of the partnership or with the authority of the partners, the partnership is liable therefor to the same extent as the partner so acting. See, also, Vrabel, supra, at 472; Reiner v. Kelley (1983), 8 Ohio App.3d 390, 393.
There is no evidence from which reasonable minds could conclude that Raymond deLevie was a partner in either of the Philadelphia firms. Instead, the only evidence is that Raymond deLevie was indeed not a partner. (See May 20, 1993 letter from Alvin deLevie to the mortgage company indicating that Raymond deLevie had no ownership interest in Alvin's law firm(s); Raymond deLevie July 16, 1998 deposition at 111-112; Raymond deLevie August 13, 1998 deposition at 543; Alvin deLevie deposition at 65-66, 97, 118-119; Jaffe deposition at 9, 58; Raymond deLevie affidavit at record No. 76; Alvin deLevie affidavit at record No. 77; Jaffe affidavit at record No. 78.) Raymond deLevie's income from his work for the Philadelphia firms was reported on IRS Form 1099s as nonemployee compensation.
Appellant asserted at oral argument that Alvin deLevie shared an attorney fee award with Raymond deLevie in a certain case (the Mattie Carroll case) and that such constitutes evidence of a partnership. A review of the evidence submitted reveals that Raymond deLevie indeed worked on the Mattie Carroll case for deLevie Jaffe. (Raymond deLevie July 16, 1998 deposition at 206-207; Alvin deLevie deposition at 256.) The case was settled, and deLevie Jaffe received attorney fees, $35,494.40 of which went to Alvin deLevie. (Alvin deLevie deposition at 254-255; Jaffe deposition at 40-41.) Alvin deLevie testified that his brother was not paid any monies out of this amount. (Alvin deLevie deposition at 257.) Further, Raymond deLevie testified that he has never shared with Alvin deLevie or Mr. Jaffe a fee received by deLevie 
Jaffe. (Raymond deLevie August 13, 1998 deposition at 543.)
There was general testimony that Alvin deLevie paid Raymond deLevie for projects and then Alvin deLevie would be reimbursed for such amounts if attorney fees were later generated in the underlying case. However, this does not amount to a splitting of attorney fees or a sharing of profits as exists between partners. Appellant points to various series of checks written to Raymond deLevie by Alvin deLevie which allegedly add up to one-third of attorney fees in certain cases. However, the evidence as a whole shows that Raymond deLevie was paid, in essence, once a month on a project-by-project basis, prior to and regardless of whether a case generated a fee. This payment arrangement spanned over five years, yet the evidence shows that deLevie Jaffe cases only generated attorney fees in four or five cases. (Alvin deLevie deposition at 255-256, 336; Jaffe deposition at 38-39.)
The evidence shows that not only did Raymond deLevie not share in the profits of the Philadelphia firms, he did not share in the losses of the firms either, as a partner would. In essence, appellant's contentions are based on, at best, inference upon inference. The evidence simply does not create a genuine issue of fact as to Raymond deLevie's status as a partner.
Even if we assumed for argument's sake that Raymond deLevie was a partner in either of the Philadelphia firms, we have already determined that Raymond deLevie's conduct with regard to the domestic dispute with appellant was not in the scope of his employment or agency with the Philadelphia firms. Hence, even if Raymond deLevie was a partner, any alleged wrongful acts by him against his ex-wife were not committed in the ordinary course of the partnership business or with the other partners' authority.
Given all of the above, no genuine issue of fact has been raised to suggest that Alvin deLevie and Mr. Jaffe are liable under a partnership theory. Hence, summary judgment in favor of Alvin deLevie and Mr. Jaffe on appellant's claim for partnership liability was appropriate.
Accordingly, appellant's sixth assignment of error is overruled.
In her seventh and eighth assignments of error, appellant contends the trial court erred in failing to consider the liability of appellees under a ratification theory. To the extent this theory was argued by the parties below, we will conduct a de novo review.
Appellant contends appellees ratified Mr. deLevie's wrongful conduct and, therefore, could be held liable for such conduct. Where an employer expressly or impliedly ratifies actionable conduct of an employee, punitive damages may be recovered from the employer. Saberton v. Greenwald (1946), 146 Ohio St. 414, paragraph three of the syllabus. See, also, State ex rel. Riley Constr. Co. v. East Liverpool Bd. of Edn. (1967), 10 Ohio St.2d 25, 29 (it is well-established that a principal may ratify the acts of his or her agent performed beyond the agent's authority, and such ratification extends back to the doing of the unauthorized act by the agent and binds the principal).
A plaintiff need prove ratification only where the employee's actions are outside the scope of employment. Fulwiler v. Schneider (1995),104 Ohio App.3d 398, 406. A principal ratifies the unauthorized act of the agent if the principal, with full knowledge of the facts, conducts himself or herself in a way which manifests the intention to approve an earlier act performed by the agent which did not bind the principal. Bailey v. Midwestern Ent., Inc. (1995), 103 Ohio App.3d 181, 185. See, also, Bernardo v. Anello (1988), 61 Ohio App.3d 453, 459.
Again, as to the domestic proceedings between Mr. deLevie and appellant, there was no agency relationship between Mr. deLevie and appellees such that ratification by a principal could occur. However, even if we assume that in such context an agency relationship existed and that Mr. deLevie's conduct was outside the scope of such agency, ratification has not been shown. We have already discussed the fact that there is no evidence that appellees were aware of Mr. deLevie's prolonged and alleged wrongful conduct against his ex-wife. Without full knowledge of the alleged wrongful acts, appellees could not have ratified or approved of such acts.
There being no evidence upon which reasonable minds could conclude that appellees had full knowledge of Mr. deLevie's alleged wrongful conduct, summary judgment as to appellant's ratification claim was appropriate.
Accordingly, appellant's seventh and eighth assignments of error are overruled.
In summary, each of appellant's assignments are overruled. Having overruled all of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
 _________________ TYACK, J.
KENNEDY, J. BRYANT, P.J., concur.
[1] On December 19, 1997, the defendants voluntarily dismissed their counterclaims for abuse of process.
[2] There was some evidence that Alvin deLevie had a limited, general knowledge of his brother's "divorce proceeding." See Raymond deLevie July 16, 1998 deposition at 130-131. Alvin deLevie testified that he was not aware of what his brother's domestic litigation was, that he was unaware there was "ongoing litigation," and that Raymond did not really talk about what was happening. (Alvin deLevie deposition at 292-293.)
[3] In domestic proceedings involving spousal support and/or child support, Civ.R. 75(B) permits the joinder as party defendants of the employer of a person ordered to pay child support, or of a person or corporation who has possession or control of property out of which another seeks support.