BYRD ET AL., APPELLEES, *v.*
FABER; OHIO CONFERENCE OF SEVENTH-DAY ADVENTISTS ET AL., APPELLANTS.

[Cite as Byrd *v.* Faber (1991), 57 Ohio St. 3d 56.]

(No. 89-1722—Submitted October 24, 1990—Decided January 16, 1991.)

*Alan P. Gustafson,* for appellees.
*Vorys, Sater, Seymour & Pease,*

---

[1] Even though the trial court characterized the motion as a Civ. R. 12(C) motion for judgment on the pleadings, on appeal the parties acknowledged that the motion should be treated as a Civ. R. 12(B)(6) motion for failure to state a claim. Thus, both the court of appeals' opinion and this opinion treat the appellants' motion as a Civ. R. 12(B)(6) motion for failure to state a claim.

*Bruce L. Ingram, Tony C. Merry* and *Richard B. Murray,* for appellants.

*Dobbs & Dobbs* and *James B. Dobbs,* urging reversal for *amici curiae,* Baptist Joint Committee on Public Affairs, American Jewish Congress, Christian Legal Society, National Association of Evangelicals and National Council of Churches of Christ in the U.S.A.

ALICE ROBIE RESNICK, J. This appeal is concerned solely with the liability of the appellants, the Ohio Conference of Seventh-day Adventists et al. The claims against Faber are still pending in the trial court, and consequently, are not before us at this time. However, as the appellants' liability is in several respects dependent upon the liability of their employee, Faber, it is necessary for us to discuss certain aspects of the appellees' case against Faber. Initially, we must determine whether it is possible for the appellees to bring a claim against Faber for clergy malpractice. If such a cause of action is viable, then it is conceivable that recovery might also be available against the appellants through application of the doctrine of respondeat superior.

In their complaint, appellees allege that Faber "did not exercise the degree of care and skill ordinarily exercised by others of his profession * * *." This allegation is advanced as a claim separate and distinct from their claims of fraud, intentional infliction of emotional distress, and nonconsensual sexual conduct. In its opinion, the court of appeals assumed that through this allegation, the appellees had stated a valid claim for clergy malpractice. However, our holding in *Strock* v. *Pressnell* (1988), 38 Ohio St. 3d 207, 527 N.E. 2d 1235, prevents the appellees, based upon the facts as presented in their complaint, from maintaining a separate cause of action for clergy malpractice.

As we noted in *Strock, supra,* the doctrine of charitable immunity no longer protects religious institutions and other nonprofit organizations from tort liability. *Albritton* v. *Neighborhood Centers Assn.* (1984), 12 Ohio St. 3d 210, 12 OBR 295, 466 N.E. 2d 867. Consequently, a church may be held liable both for the negligence of its employees who are acting within the scope of their employment as well as for its own negligence. For example, it has been held that if a church hires an individual despite knowledge of prior improper behavior in his former church-related employment, the church may be liable in tort for negligent hiring. *Bender* v. *First Church of the Nazarene* (1989), 59 Ohio App. 3d 68, ___ N.E. 2d ___ ; see, also, *Matthews* v. *Wittenberg College* (1960), 113 Ohio App. 387, 17 O.O. 2d 431, 178 N.E. 2d 526.

However, there is considerable disagreement regarding the potential liability of a member of the clergy for "clergy malpractice." "Clergy malpractice" has been defined as the failure to exercise the degree of care and skill normally exercised by members of the clergy in carrying out their professional duties. In *Strock* v. *Pressnell, supra,* we held that in order to generate a cause of action for "clergy malpractice," the cleric's behavior must "fall outside the scope of other recognized torts." *Id.* at 212, 527 N.E. 2d at 1239. If the cleric's behavior fits within an established category of liability, such as fraud, duress, assault, or battery, it would be redundant to simultaneously hold the cleric liable for "clergy malpractice": " '[t]o avoid a redundant remedy, * * * any functional theory of clergy malpractice needs [to] address incidents of the clergy-communicant relationship

not already actionable.' " *Id.*, citing *Hester* v. *Barnett* (Mo. App. 1987), 723 S.W. 2d 544, 551.

The appellees' claim for clergy malpractice does not address any aspect of the clergy-communicant relationship not already actionable. The gravamen of their complaint is that Faber forced Garnet Byrd to engage in sexual conduct with him. For this activity, Faber may be found liable not only for nonconsensual sexual conduct, *i.e.*, battery, but also for fraud and intentional infliction of emotional distress. In essence, through the creative use of tort law, appellees may recover several times for the same injury. To then allow recovery for clergy malpractice on the basis of this same conduct would be to grant a redundant remedy. Appellees have not named any activity engaged in by Faber for which recovery in tort is not available. Hence, under *Strock, supra,* there is no basis for recognizing their claim for clergy malpractice, either against Faber, or, through application of the doctrine of respondeat superior, against the appellants.

We move now to the appellees' claims for nonconsensual sexual conduct, fraud, and intentional infliction of emotional distress. If the appellees are able to prove any of these claims as against Faber, then they may be able to recover against the appellants through application of the doctrine of respondeat superior. This case differs from *Strock, supra,* where the plaintiff was unable to recover from the employer because he had no underlying claim against the employee. As we stated in *Strock,* "[i]t is axiomatic that for the doctrine of respondeat superior to apply, an employee must be liable for a tort committed in the scope of his employment." *Id.* at 217, 527 N.E. 2d at 1244. Here, the possibility exists that Faber is liable in tort to the Byrds

for nonconsensual sexual conduct, fraud, and intentional infliction of emotional distress. Thus, theoretically, the appellants may be liable to the appellees under the doctrine of respondeat superior.

However, close examination of the appellees' complaint and of the principles of respondeat superior liability reveals that the appellees have failed to state a viable claim against the appellants. As noted above, the gravamen of the appellees' complaint is that Faber engaged in nonconsensual sexual conduct with Garnet Byrd. Without this allegation, the appellees would have no basis for claiming that Faber engaged in fraud or the intentional infliction of emotional distress; without it, their complaint would have no factual basis. Consequently, in order to determine whether the appellants may be liable for the alleged wrongs of Faber, we must decide whether a church may be held liable under the doctrine of respondeat superior for nonconsensual sexual conduct between a pastor and a parishioner.

It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, as in the case at bar, the behavior giving rise to the tort must be "calculated to facilitate or promote the business for which the servant was employed * * *." *Little Miami RR. Co.* v. *Wetmore* (1869), 19 Ohio St. 110, 132; *Taylor* v. *Doctor's Hosp.* (1985), 21 Ohio App. 3d 154, 21 OBR 165, 486 N.E. 2d 1249. For example, an employer might be liable for an intentional tort if an employee injures a patron when removing her from the employer's business premises or blocking her entry. The removal of patrons, who

may be unruly, underage, or otherwise ineligible to enter, is calculated to facilitate the peaceful and lawful operation of the business. Consequently, an employer might be liable for an injury inflicted by an employee in the course of removal of a patron. See, *e.g.*, *Stewart* v. *Napuche* (1952), 334 Mich. 76, 53 N.W. 2d 676; *Kent* v. *Bradley* (Tex. Civ. App. 1972), 480 S.W. 2d 55.

However, the employer would not be liable if an employee physically assaulted a patron without provocation. As we held in *Vrabel* v. *Acri* (1952), 156 Ohio St. 467, 474, 46 O.O. 387, 390, 103 N.E. 2d 564, 568, "an intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor." See, also, *Schulman* v. *Cleveland* (1972), 30 Ohio St. 2d 196, 59 O.O. 2d 196, 283 N.E. 2d 175. In other words, an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business.

These general principles have been specifically applied when analyzing the liability of religious organizations for the activities of individual clerics whom they employ. In *Milla* v. *Tamayo* (1986), 187 Cal. App. 3d 1453, 232 Cal. Rptr. 685, the plaintiff, a sixteen-year-old girl, was allegedly seduced by seven priests of the Archdiocese of Los Angeles. The priests purportedly used their positions to entice the girl to remain silent while they had sexual intercourse with her, impregnated her, and sent her to the Phillipine Islands to give birth. The California appellate court stated that in order for the Archdiocese to be liable under the theory of respondeat superior for the priests' actions, their conduct must be characteristic of the activities of the church or otherwise reasonably foreseeable. Applying that principle to the facts before it the court concluded:

"It would defy every notion of logic and fairness to say that sexual activity between a priest and a parishioner is characteristic of the Archbishop of the Roman Catholic Church. * * * Similarly, appellant has not pointed out any fact which could lead this court to the conclusion that the Archbishop 'ratified' the concupiscent acts of the priests." *Id.* at 1461, 232 Cal. Rptr. at 690.

Another district of the California Court of Appeals reached a similar conclusion in *Scott* v. *Central Baptist Church* (1988), 197 Cal. App. 3d 718, 243 Cal. Rptr. 128. In *Scott*, the court was asked to decide whether a church should be held liable for repeated acts of sexual assault on a minor perpetrated by a Sunday school teacher. Applying the standard enunciated in *Milla, supra*, the court noted that the church could only be held liable if the teacher's acts were required or incident to his duties or, if not, could have been reasonably foreseen by the church. *Id.* at 721, 243 Cal. Rptr. at 130. All the evidence suggested that the teacher's acts were independent self-serving pursuits unrelated to church activities. *Id.* at 722, 243 Cal. Rptr. at 130. Moreover, the teacher's acts of sexual molestation were not foreseeable in light of the duties he was hired to perform. *Id.* Consequently, the *Scott* court concluded that the church could not be held liable under the doctrine of respondeat superior for the teacher's activities.

The doctrine of respondeat superior is similarly inapplicable in the case at bar. The Seventh-day Adventist organization in no way promotes or advocates nonconsensual sexual con-

duct between pastors and parishioners. The appellants did not hire Faber to rape, seduce, or otherwise physically assault members of his congregation. Furthermore, appellees have alleged no fact indicating that the appellants should reasonably have foreseen that Faber would behave in this manner toward his parishioners. Consequently, appellees have failed to state a claim of respondeat superior liability on the part of the church, and the trial court was correct in dismissing that portion of their complaint.

The appellees have similarly failed to state a claim for negligent hiring on the part of the appellants. Count Five of their complaint states in pertinent part: "The Defendant employees [*sic*] knew, or should have known of the inclination for Defendant Faber to commit such actions and was reckless or negligent in allowing said Defendant to assume the position of pastor in Knox County, Ohio* * *." The trial court held that this language failed to state a claim against the appellants. The court of appeals reversed, but did not engage in a separate discussion of the negligent hiring claim, choosing instead to conflate this issue with the issue of respondeat superior liability.

Under Ohio law, when a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Mitchell* v. *Lawson Milk Co.* (1988), 40 Ohio St. 3d 190, 192, 532 N.E. 2d 753, 756. In order for a judge to grant a motion to dismiss for failure to state a claim, it must appear " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242, 245, 71 O.O. 2d 223, 224, 327 N.E.

2d 753, 755, citing *Conley* v. *Gibson* (1957), 355 U.S. 41, 45-46. While there is no question regarding this standard, there is considerable debate about how much specificity is required in order for a plaintiff to survive a motion to dismiss. A survey of Ohio law reveals, however, that where important public policies warrant a limitation on the number of claims, this court has refused to allow a plaintiff to survive a motion to dismiss through the mere incantation of an abstract legal standard.

In *Mitchell, supra,* the plaintiff filed an intentional tort claim against an employer after an employee was fatally shot while working alone in the employer's store at night. The plaintiff claimed that the employer knew or should have known that its employees were subject to armed robberies and other violent acts and that the employer had wilfully and intentionally failed to provide protection. Although the plaintiff advanced this allegation in his complaint, he included no facts to support it. In granting the defendant's Civ. R. 12(B)(6) motion to dismiss, this court stated, "[u]nsupported *conclusions* that appellant committed an intentional tort are not taken as admitted by a motion to dismiss and are not sufficient to withstand such a motion." (Emphasis *sic.*) *Id.* at 193, 532 N.E. 2d at 756. We then proceeded to carve out a heightened standard of review for Civ. R. 12(B)(6) motions in the intentional tort context. Citing the need to deter the number of baseless claims against employers, the importance of preventing every workplace injury from being converted into an intentional tort claim, and the goal of facilitating the efficient administration of justice, we held that in order to survive a Civ. R. 12(B)(6) motion to dismiss, a plaintiff bringing an intentional tort claim against an

employer must allege certain facts with particularity.[2]

A heightened standard of pleading is also required when a plaintiff brings a claim for fraud. Civ. R. 9(B) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The chief purpose of this rule is to protect defendants from unfounded charges of wrongdoing which may injure their reputations. See *In re Commonwealth Oil/Tesoro Petroleum Corp. Securities Litigation* (W.D. Tex. 1979), 467 F. Supp. 227; *Haddon View Investment Co.* v. *Coopers & Lybrand* (1982), 70 Ohio St. 2d 154, 24 O.O. 3d 268, 436 N.E. 2d 212. While a complete reversion to fact pleading is to be avoided, the goal of protecting the reputations of upstanding members of the community is important enough to require that facts be pled with particularity in order for a plaintiff to survive a motion to dismiss.

We hold today that as with fraud claims and intentional tort claims against employers, greater specificity in pleading is required when a claim is brought against a religious institution for negligent hiring due to the myriad First Amendment problems which accompany such a claim. In order to survive a Civ. R. 12(B)(6) motion to dismiss, a plaintiff bringing a negligent hiring claim against a religious institution must plead operative facts with particularity. See *Mitchell, supra*, at 194, 532 N.E. 2d at 757 (Douglas, J., concurring). Specifically, the plaintiff must plead facts which indicate that the individual hired had a past history of criminal, tortious, or otherwise dangerous conduct about which the religious institution knew or could have discovered through reasonable investigation. The mere incantation of the elements of a negligent hiring claim, *i.e.*, the abstract statement that the religious institution knew or should have known about the employee's criminal or tortious propensities, without more, is not enough to enable a plaintiff to survive a motion to dismiss for failure to state a claim.

As with fraud claims and intentional tort claims against employers, an important principle underlies our decision to require that the plaintiff plead operative facts with particularity. In order to determine whether a religious organization has exercised due care in hiring, it is necessary to examine its employment policies and practices. In all probability, these policies will be infused with the religious tenets of the particular sect involved. If the state becomes involved in assessing the adequacy of these standards, serious entanglement problems may arise under the First Amendment. See, *e.g., Lemon* v. *Kurtzman* (1971), 403 U.S. 602. While even the most liberal construction of the First Amendment will not protect a religious organization's decision to hire someone who it knows is likely to commit criminal or tortious acts, the mere incantation of an abstract legal standard should not subject a religious organization's employment policies to state scrutiny. Consequently, in order to survive a motion to dismiss, a plaintiff

---

[2] Specifically, we held in *Mitchell, supra*, in the syllabus, that "a claim of intentional tort against an employer will be dismissed as failing to establish that the pleader is entitled to relief unless the complaint alleges facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and despite this knowledge, still proceeded. * * *"

bringing a negligent hiring claim must allege some fact indicating that the religious institution knew or should have known of the employee's criminal or tortious propensities.

Applying this standard to the case at bar, we hold that the trial court was correct in dismissing the appellees' complaint for failure to state a claim. The appellees alleged no fact indicating that Faber had a past history of criminal or tortious conduct about which the appellants knew or should have known. In fact, beyond discussing Faber's conduct toward Mrs. Byrd, the appellees do not discuss any of his activities either before or after he was hired. They do not refer to any fact within the knowledge of the appellants which should have prevented them from employing Faber. Appellees' complaint merely recites the elements of a negligent hiring claim and then seeks recovery. As the appellees have alleged no fact suggesting that the appellants were negligent in hiring Faber, the trial court was correct in dismissing their complaint as to the appellants for failure to state a claim.

For reason of the foregoing, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

SWEENEY, J., dissents.