OPINION
Plaintiff-appellant, James Langford, appeals the April 19, 2001 dismissal entry of the Ohio Court of Claims granting defendant-appellee, Ohio Department of Rehabilitation and Correction's, motion to dismiss. For the reasons that follow, we affirm.
Langford has been employed with the Ohio Department of Rehabilitation and Corrections ("DRC") since November 1, 1993. (Complaint at 3.) On January 1, 1995, Langford began working at the Belmont Correctional Institution. On March 21, 2000, Langford interviewed for the unclassified position of Correction Warden Assistant I.[1] (Complaint at 4.) Langford was recommended for the position and started work as a Correction Warden Assistant I on March 27, 2000. (Complaint at 4, 5.) On April 3, 2000, Langford was informed by DRC that the Southern Association of Colleges and Schools, Commission on Colleges, did not recognize his Bachelor of Science degree from Chadwick University. (Complaint at 5.) As a result, Langford was removed from the position as Correction Warden Assistant I.
On January 31, 2001, Langford filed a complaint in the Ohio Court of Claims against DRC alleging DRC violated his equal protection rights under the Ohio Constitution, and violated the public policy set forth under Ohio Adm. Code 124-9-11. On March 1, 2001, DRC filed a Civ.R. 12(B)(1) and (6) motion to dismiss. After being granted an extension to reply, Langford filed his memorandum contra on April 6, 2001. On April 19, 2001, the trial court granted DRC's motion to dismiss. The trial court determined that it lacked subject matter jurisdiction over plaintiff's constitutional claims, and that Ohio Adm. Code 124-9-11 did not establish a "sufficiently clear public policy" to justify an exception to Ohio's Employment-at-Will Common Law Doctrine.
It is from this entry that Langford appeals, raising the following sole assignment of error:
 Assignment of Error I: The Trial Court Improperly Granted Defendant's Motion To Dismiss.
On appeal, Langford argues that the trial court erred by finding that it did not have subject matter jurisdiction of his constitutional claim. The standard of review for a motion to dismiss, pursuant to Civ.R. 12(B)(1), is "whether any cause of action cognizable by the forum has been raised in the complaint." State ex rel. Bush v. Spurlock (1989),42 Ohio St.3d 77, 80. On appeal, an appellate court considers the issue de novo, reviewing the issue independently of the trial court's decision. Shockey v. Fouty (1995), 106 Ohio App.3d 420, 424.
In his complaint, Langford alleged a violation of his equal protection rights under Section 2, Article I, Ohio Constitution. The state is liable in the Court of Claims "in accordance with the same rules of law applicable to suits between private parties." R.C. 2743.02(A)(1). Therefore, the Court of Claims lacks jurisdiction to hear a claim to the extent that it asserts constitutional violations. White v. Dept. of Rehab. Corr. (Dec. 22, 1992), Franklin App. No. 92AP-1229, unreported. In White, this court affirmed the Court of Claims' dismissal of a prison inmate's claims against the Ohio Department of Rehabilitation and Corrections alleging violations of his constitutional rights. In the opinion, we stated:
 To the extent plaintiff's allegations are meant to assert violations of his constitutional rights under the Ohio or United States Constitutions, the Court of Claims lacks jurisdiction. More particularly, pursuant to R.C. 2743.02, the state has consented to be sued in the Court of Claims in accordance with the same rules applicable to private persons. Since a private party cannot be held liable for the constitutional claims plaintiff asserts, his complaint is not within the jurisdiction of the Court of Claims. Thompson v. Southern State Community College (June 15, 1989), Franklin App. No. 89AP-114, unreported (1989 Opinions 2118); cf. NCAA v. Tarkanian (1988), 488 U.S. 179.
In this case, it is clear to this court that the Ohio Court of Claims lacked jurisdiction of the state law claim alleged in Count I of Langford's complaint. See, cf. Thompson v. Southern State Community College (June 15, 1989), Franklin App. No. 89AP-114, unreported; Graham v. Ohio Bd. of Bar Examiners (1994), 98 Ohio App.3d 620. Therefore, the trial court properly dismissed appellant's claim.
Langford further contends that the trial court erred in finding that Ohio Adm. Code 124-9-11 does not establish a "sufficiently clear public policy" exception to Ohio's Employment-at-Will Doctrine, thereby warranting the dismissal of Langford's complaint pursuant to Civ.R. 12(B)(6). Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is also de novo. Greeley v. Miami Valley Maintenance Contrs., Inc. (1990), 49 Ohio St.3d 228, 229. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs. (1992), 65 Ohio St.3d 545, 548. The court will only look to the complaint to determine whether the allegations are legally sufficient to state a claim. Id. Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. Byrd v. Faber (1991), 57 Ohio St.3d 56, 60.
Langford argues that, pursuant to Ohio Adm. Code 124-9-11, a clear public policy does exists that prohibits the disparate treatment of public employees. Ohio Adm. Code 124-9-11 states:
 (A) The board may hear evidence of disparate treatment between the appellant and other employees of the appointing authority for the purpose of determining whether work rules or administrative policies are being selectively applied by the appointing authority or to determine whether the discipline of similarly situated employees is uniform. Requests for discovery under this rule shall be limited to information relating to specific incidents or persons known to the employee or his representative.
 (B) Evidence of disparate treatment will be considered in evaluating the appropriateness of the discipline which was imposed.
 (C) Evidence of disparity in the classification of co-workers is not admissible in reclassification appeals.
In ruling on a motion to dismiss under Civ.R. 12(B)(6), the material allegations of the complaint are taken as admitted. State ex rel. Alford v. Willoughby (1979), 58 Ohio St.2d 221.
In the case sub judice, Langford contends that DRC violated clear public policy pursuant to Ohio Adm. Code 124-9-11 when DRC discriminated against Langford in selectively applying the administrative polices. Specifically, Langford contends that although other employees had degrees from Chadwick University and other non-accredited institutions, DRC removed him from the unclassified position of Correction Warden Assistant I because he did not have a degree from an accredited university. Ohio Adm. Code 124-9-11 speaks to the disparate treatment of employees within the classified service. Langford's position is unclassified. As such, Ohio Adm. Code 124-9-11 does not apply to Langford's unclassified status. The Ohio Supreme Court held in Greeley, at paragraph one of the syllabus, that "[p]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." In 1994, the Ohio Supreme Court reaffirmed the holding of Greeley and held that "an exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a `sufficiently clear public policy.'" Painter v. Graley (1994), 70 Ohio St.3d 377, 384. The allegation contained in Langford's complaint failed to state a violation of a sufficiently clear public policy to warrant creation of a cause of action in his favor. As such, appellant's assignment of error is not well-taken and is overruled.
For the foregoing reasons, Langford's sole assignment of error is overruled and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
BRYANT, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] The minimum qualifications for the position of Correction Warden Assistant I required: (1) completion of undergraduate major core program in criminal justice or related field; or (2) two years experience in the Ohio Adult Rehabilitation and Correction system; one course or three months experience in English grammar composition or business communication; or (3) equivalent of minimum class qualification for employment noted above. (Complaint at 6.)