David L. WILLIAMS, Plaintiff–Appellant,

v.

YORK INTERNATIONAL CORPORATION, Defendant–Appellee.

No. 01–3699.

United States Court of Appeals, Sixth Circuit.

April 3, 2003.

Before BOGGS, SUHRHEINRICH, and CLAY, Circuit Judges.

BOGGS, Circuit Judge.

David L. Williams appeals from the judgment and final order of the district court granting York International Corporation's ("York") motion for summary judgment and dismissing his claims with prejudice in this diversity case. Williams argues that the district court erred in granting summary judgment because it made credibility determinations and weighed the evidence presented and by doing so, usurped traditional jury functions.

## I

The claims brought by Williams against York arise out of an altercation that occurred between him and Robert Stonestreet on July 23, 1999. Williams worked in the cooling department at York, which manufactures heating and air conditioning products. Stonestreet was a supervisor in another department, to which Williams was "loaned out." At York, employees were occasionally "loaned out" to other departments. During these times, employees were supervised by and accepted direction from the supervisor of that department.

On the evening of July 23, Stonestreet approached Williams and asked him why

he was not sending the units he had finished down the line. Williams replied that the workers down the line had not finished work on the units he had already sent, and he would therefore not send any more down. Stonestreet instructed Williams to continue sending units down. Four hours later, Stonestreet asked Williams to help another employee in order to correct a back-up. Williams resisted, telling Stonestreet he had been helping that other employee all night and had to complete his own job first. After Stonestreet twice repeated his instruction, and Williams twice refused, Stonestreet erupted into a rage. Williams alleges that Stonestreet was yelling, pointed a finger in his face, and pushed him with his hands and bumped him with his chest.

Stonestreet paged another supervisor and advised him of what had happened. Stonestreet told the other supervisor that Williams had spit on him and had called him a "bitch." After another employee approached Stonestreet and Williams, Stonestreet walked away. The entire incident apparently lasted only a few minutes.

Ten minutes later, Stonestreet and Williams met in the office with two other supervisors and a union steward. They each related their grievances: Stonestreet said Williams had spit on him and called him a bitch; Williams said that Stonestreet had pushed him and bumped him with his chest. Williams then returned to work and finished his shift. After his shift, Williams went to the Elyria Police Department to file an assault complaint against Stonestreet. Two York employees filed witness statements on his behalf. Stonestreet was charged with disorderly conduct, and later pled not guilty. The case was set for trial on January 3, 2000. The case was dismissed after Stonestreet died in December 1999.

On July 24, 1999, Williams was asked to attend a meeting with Stonestreet's boss, the Vice President of the Union, and the union representative. Williams stated that Stonestreet had pushed him and bumped him with his chest. He returned to his shift after the meeting. A joint union-company investigation was conducted. After employees who were questioned provided sufficient corroboration to establish that York rules of conduct were violated, the union and the company agreed that Williams and Stonestreet were to be suspended for five days. Both were warned that more serious discipline, including discharge, would follow any further incidents.

The union filed a grievance on Williams's behalf on August 13, 1999, requesting reimbursement for the five days of lost pay and removal of the disciplinary notice from his file because his suspension was unjust. The union withdrew the grievance at the second step of the process.

Williams met with a doctor on November 18, 1999. He was diagnosed with "post-traumatic stress disorder with depression," and met with the doctor six times through October 2000.

On March 30, 2000, Williams filed a complaint in federal district court, alleging assault, battery, wrongful suspension from employment, defamation of character, intentional infliction of emotional distress, and negligent infliction of emotional distress. Williams alleged diversity jurisdiction. York is a Delaware corporation and Williams is a citizen of Ohio. He alleged that the amount in controversy exceeded $75,000. York answered, alleging that certain of Williams's state-law claims were preempted under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

The district court granted York's motion for summary judgment. In its opinion, the district court concluded that Williams's

claims for intentional infliction of emotional distress and wrongful suspension from employment were preempted by federal law.[1] It held that Williams had not met the elements of the intentional infliction of emotional distress claim. The court went on to state that a "wrongful suspension from employment" claim did not exist in Ohio, and it declined to create such a claim. The district court dismissed Williams's claims for defamation of character and negligent infliction of emotional distress without addressing the preemption issue because Williams had failed to demonstrate the elements of those claims. And finally, the district court dismissed with prejudice the assault and battery claims because Williams failed to show that York was vicariously liable for Stonestreet's torts. Williams timely appealed.[2] We affirm, though on different grounds in part.

**II**

This court reviews a district court's grant or denial of summary judgment *de novo*, and its findings of fact for clear error. *Dudley v. Eden*, 260 F.3d 722, 725 (6th Cir.2001); *Grand Traverse Band of Ottawa and Chippewa Indians v. Dir., Mich. Dep't of Natural Res.*, 141 F.3d 635, 638 (6th Cir.1998) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041–42 (6th Cir.1992)). Summary judgment is appropriate when it appears "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56).

Initially, the party moving for summary judgment bears the burden of production under Rule 56. The movant may present evidence that negates an element of the non-movant's claim, or may demonstrate "an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the burden is met, the non-movant must show there is a genuine issue at trial by "mak[ing] a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "the mere existence of *some* alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. *Id.* at 247–48.

**III**

■ In Ohio, a plaintiff claiming assault must prove that the defendant unlawfully touched or attempted to touch him with the intent of inflicting injury or at least intending to create fear of injury. *Tarver v. Calex Corp.*, 125 Ohio App.3d 468, 708 N.E.2d 1041, 1051 (1998); *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 614 N.E.2d 1148, 1154 (1993). To establish a battery claim, the plaintiff must show that harmful or offensive contact actually resulted.

---

1. The court stated that had the state law claims not been preempted, that it would have dismissed the case for lack of jurisdiction as Williams had not demonstrated to the court that damages were in excess of $75,000. We disagree.

2. Williams's brief contests the granting of summary judgment in favor of York on the claims of assault and battery and intentional or negligent infliction of emotional distress. The appeal on the claims of wrongful suspension of employment and defamation of character are presumed to be waived.

*Blankenship v. Park Care Ctrs., Inc.,* 913 F.Supp. 1045, 1052 (S.D.Ohio 1995).

Stonestreet arguably assaulted and battered Williams during their altercation. However, in order for York to be held accountable for Stonestreet's actions, this assault and battery must have been committed within the scope of Stonestreet's employment with York. *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584, 587 (1991). If the torts (in this case, assault and battery) are intentional, the relevant behavior must be calculated to facilitate or promote business. *Ibid.* "[A]n intentional and wilful attack committed by … an employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his … employer is not responsible therefor." *Id.* at 588 (quoting *Vrabel v. Acri,* 156 Ohio St. 467, 103 N.E.2d 564, 568 (1952)).

The alleged assault and battery did take place while Stonestreet was supervising Williams and occurred during working hours. However, supervision "does not include using physical violence to reprimand an employee." *Dorsey v. Morris,* 82 Ohio App.3d 176, 611 N.E.2d 509, 511 (1992). It is clear from evidence that York submitted to the district court that York in no way condoned or ratified Stonestreet's behavior. York's Employee Handbook proscribes any sort of violence or threats in the workplace. York also suspended Stonestreet for five days as a consequence of his behavior, and warned him that any further incidents would be punished with serious discipline or dismissal.

Williams did not meet the burden of production to establish York's liability for Stonestreet's assault and battery. The district court properly granted summary judgment to York on these two claims.

## IV

The district court held that Williams's intentional infliction of emotion-

al distress claim was preempted by federal labor law. 29 U.S.C. § 185 (§ 301 of the Labor Management Relations Act). In this circuit, there is a two-step process for determining whether state-law claims are preempted by federal labor law. *DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994). First, the court "must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms," and then "must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *Ibid.* If either condition is fulfilled, then preemption is warranted. *Ibid.*

The district court held that all claims for intentional infliction of emotional distress in unionized workplaces are preempted, citing *Beckwith v. Diesel Technology Co.,* 215 F.3d 1325 (Table), 2000 WL 761808, at *4 (6th Cir. May 30, 2000), *DeCoe,* 32 F.3d at 219–20, and *Knafel v. Pepsi Cola Bottlers, Inc.,* 850 F.2d 1155, 1162 (6th Cir. 1988). The court concluded that in order to determine whether the defendant had acted extremely or outrageously, it must refer to the collective bargaining agreement (to which both Williams and York were bound) to determine what constitutes proper conduct.

The district court's conclusion that preemption is warranted in all cases involving intentional infliction of emotional distress is too broad. The cases that the district court cites are all distinguishable. For instance, in *DeCoe,* the court found that a claim for intentional infliction of emotional distress was preempted by § 301 because the court had to refer to the collective bargaining agreement in order to determine whether the defendant's behavior was outrageous. *DeCoe,* 32 F.3d at 220. However, the behavior in question was a

false allegation of sexual harassment. The collective bargaining agreement contained a sexual harassment policy that imposed a duty on the union, workers, and the company to resolve sexual harassment claims. *Id.* at 217. A defendant has not acted outrageously "where he has done no more than to insist upon his legal rights in a permissible way, even though he was well aware that such insistence [wa]s certain to cause emotional distress." *Id.* at 219 (quoting *Polk v. Yellow Freight Sys., Inc.,* 801 F.2d 190, 195 (6th Cir.1986)). In *De-Coe,* the court had to determine whether the defendant was merely insisting on her legal rights, and had to do so by reference to the collective bargaining agreement's sexual harassment provisions. If the defendant was exercising her legal rights, then her conduct was not extreme or outrageous.

There is no such provision in the collective bargaining agreement cited by the district court or York. Stonestreet's behavior can be judged by common standards as to what the bounds of decency are, what can be tolerated in a civilized community, or what a reasonable man can endure, without referring to the collective bargaining agreement for guidance. Moreover, this claim is born of Ohio state law. The district court erred in finding that Williams's intentional infliction of emotional distress claim was preempted by § 301 of the Labor Management Relations Act. Thus, the claim should be analyzed under Ohio state law.

## V

■ In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff in Ohio must establish: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' 3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" *Pyle v. Pyle,* 11 Ohio App.3d 31, 463 N.E.2d 98, 103 (1983) (internal citations omitted).

Williams did not point to any evidence that tended to establish the elements of intentional infliction of emotional distress. At most he established that he suffered from some sort of psychic injury that *might* have been caused by the incident at the factory. He presented no evidence to establish Stonestreet's intent, no evidence to establish the extremity or outrageousness of Stonestreet's conduct, no evidence that his injury was proximately caused by Stonestreet's actions, and very little evidence to establish the severity of his injury. He vaguely alleges a pattern of racial abuse at the York plant. However, he failed to assert one piece of solid evidence to back up this allegation. Even when pressed by York's counsel at his deposition, he could not think of any evidence to bolster his allegation of racial harassment, except "it's all so many little things that goes on in there," and "[i]f you was in the plant, you can see it," and "I don't have any facts or personal knowledge, but I am looking at it. I am seeing it." JA 363–65.[3]

---

**3.** All of the deposition evidence that was considered by the district court was taken from excerpts of Williams's deposition attached by York to its various memoranda. York did not attach the deposition in its entirety. Williams did not provide any excerpts to support his argument.

In opposition to York's motion for summary judgment, Williams offered his affidavit, in which he alleges he has been diagnosed with post-traumatic stress disorder with depression as a result of the racial abuse he claims to have suffered at York. However, in order to survive a motion for summary judgment, when the movant has presented evidence negating an element of the non-movant's claim, or the movant demonstrates a lack of evidence to establish the non-movant's claim (as York did), the non-movant must produce some evidence to establish the elements of its claim. *Celotex*, 477 U.S. at 322, 325. Williams's affidavit expresses his own opinion of the matter, and asserts as hearsay his doctor's diagnosis of his condition. Hearsay is inadmissible in affidavits submitted in conjunction with, or in opposition to, motions for summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir.1994).

In light of Williams's failure to point to any substantive evidence that might tend to establish the elements of his claims, summary judgment was appropriate, and the district court properly dismissed his claim for intentional infliction of emotional distress. As Williams cannot sustain a claim against Stonestreet, it follows that any claim against York must also fail.

## VI

■ Regarding Williams's negligent infliction of emotional distress claim, in Ohio, "[l]iability for negligent infliction of emotional distress arises where a bystander to an accident suffers serious and foreseeable emotional injuries." *Tohline v. Cent. Trust Co.*, 48 Ohio App.3d 280, 549 N.E.2d 1223, 1228 (1988). Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context. *Ray v. Libbey Glass, Inc.*, 133 F.Supp.2d 610, 620 (N.D.Ohio 2001);

*Hatlestad v. Consol. Rail Corp.*, 75 Ohio App.3d 184, 598 N.E.2d 1302, 1306–07 (1991). The district court properly granted summary judgment to York and dismissed this claim with prejudice as Williams fails to meet a single element of this tort.

## VII

For all the foregoing reasons, the judgment of the district court, granting summary judgment to York on the assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress claims is, AFFIRMED.