OPINION
{¶ 1} Plaintiff-appellant Joseph Pingue, Jr. appeals from the October 20, 2004, February 3, 2005, February 24, 2005, and May 13, 2005, Judgment Entries of the Delaware County Court of Common Pleas and the March 23, 2005, and April 8, 2005, Orders of the Delaware County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 24, 2004, appellant Joseph Pingue, Jr. filed a complaint in Case No. 04-CVH-06-433 (hereinafter referred to "the original action") against appellee City of Delaware in the Delaware County Court of Common Pleas.
 {¶ 3} Appellant, in his complaint, alleged that he had formed a coalition of real property Owners ("the Owners") who, between them, owned contiguous tracts of land in Delaware County totaling approximately 243.6 acres ("the Owners' Property"). Appellant alleged that the Owners entered into a Sewer Agreement with appellee dated January 27, 1999.
 {¶ 4} Appellant, in his complaint, alleged that the Sewer Agreement obligated the Owners to install at their expense a sewer line ("the South Central Sewer") to service an approximately 785 acre tract ("the Tributary Area"). At the time, appellee was financially unable to install such a line. Of the 785 acres, 243.6 acres were the Owners' Property. According to the complaint, the Sewer Agreement provided that an access fee would be paid by owners of property who wished to be served by the South Central Sewer. Such access fee was to enable the Owners to recoup some of the $2.7 million cost for installation of the sewer line. Appellant further alleged that the Sewer Agreement expressly provided that, during a fifteen (15) year period, utilization of the South Central Sewer could be accomplished only pursuant to certain rights granted to the Owners in the Sewer Agreement. According to appellant, in his brief, the Sewer Agreement granted the Owners "fifteen years of exclusive use . . . of the South Central Sewer and the right to expand the Tributary Area under certain circumstances by acquiring contiguous property." Appellant asserted such right was contained in paragraph II.A.9 of the Sewer Agreement, which states as follows:
 {¶ 5} "In the event that any Owner who is a part of this Agreement acquires land contiguous to previously purchased property they own within the existing tributary area, and the acquired land is annexed to the City and furthermore it is demonstrated the proposed sanitary trunk sewer has residual capacity sufficient to serve the acquired land and the elevations are such that gravity sanitary sewer service can be extended to serve the acquired land, then the acquired land may become a part of the tributary area and may be added to the Owner's existing subdivision or development."
 {¶ 6} In his complaint, appellant also alleged that appellee breached the Sewer Agreement by engaging "in actions designed to convince owners and potential owners of contiguous property . . . to refuse to negotiate with Plaintiff [Appellant] with respect to obtaining access to the South Central Sewer." Appellant contended that appellee represented to such owners, in a pre-annexation agreement in November of 2002, that access to the South Central Sewer would be available to them without compensating appellant and the other Owners, which appellant alleged breached the express language of the Sewer Agreement.
 {¶ 7} Based on the foregoing, appellant, in his complaint, asserted claims against appellee for breach of contract (count one), injunctive relief (count two), declaratory judgment (count three), tortious interference (count four), unjust enrichment (count five), promissory estoppel (count six) and violation of Ohio's Public Records Law (count seven).
 {¶ 8} Thereafter, on July 23, 2004, appellee filed a Motion to Dismiss pursuant to Civ.R. 12(B)(6), arguing that counts one through six of appellant's complaint should be dismissed. Appellee, in its motion, argued that appellant had failed to include all necessary parties since appellant was only one of a total of six property Owners who had executed the Sewer Agreement and, therefore, had a real interest in the subject matter of the action. As memorialized in a Judgment Entry filed on October 20, 2004, the trial court dismissed appellant's claims for unjust enrichment (count five) and promissory estoppel (count six). The trial court, in its entry, further found that appellant had failed to include all necessary parties; namely, all of the parties who had executed the Sewer Agreement and ordered appellant to do so by November 2, 2004.
 {¶ 9} Subsequently, on November 2, 2004, appellant filed a First Amended Complaint that included as defendants the other Owners who had executed the Sewer Agreement. The allegations in the First Amended Complaint were the same as in the original complaint, except that the claims for unjust enrichment and promissory estoppel were not included based on the trial court's October 20, 2004, Judgment Entry.
 {¶ 10} On November 5, 2004, appellee filed another Motion to Dismiss pursuant to Civ.R. 12(B)(6), seeking dismissal of all of the claims in the First Amended Complaint, except for the public records law claim. Pursuant to a Judgment Entry filed on February 3, 2005, the trial court granted appellee's motion and dismissed all of the counts in appellant's First Amended Complaint except for the public records law claim.
 {¶ 11} Thereafter, on February 22, 2005, appellant filed a new complaint against appellee (the "second action") in Case No. 05-CVH-02-146. Appellant, in his complaint, alleged that appellee had breached a different provision of the Sewer Agreement and asserted claims for breach of contract and injunctive relief. Appellant, in his second action, specifically argued that appellee had breached Section II.A.9 of the Sewer Agreement by signing contracts with owners of property outside the Tributary Area which promised an extension of the South Central Sewer to serve the owners of such property, which were known as the Glenross and Grady Memorial properties. Appellant specifically cited to the following language in the Sewer Agreement:
 {¶ 12} "This extension of sanitary sewer service to lands beyond the current boundaries of the tributary area shall only
be available to the Owners for fifteen (15) years from the date of formal acceptance of the sanitary trunk sewer as a Public Improvement by the City and also at any time of the City toservice existing structures on land contiguous to the tributaryarea and to public and semi-public facilities on lands notadjacent to the Tributary Area such as the Delaware JointVocational School South Campus and Camp Lazarus so long as thefacilities remain for public and semipublic use. (Emphasis added)."
 {¶ 13} On February 22, 2005, appellant also filed a Motion for a Temporary Restraining Order pursuant to Civ.R. 65. Appellant, in his motion, specifically moved the trial court for an order "Enjoining defendant, the City of Delaware, Ohio, from engaging in any activities to facilitate or cause: (1) the `oversizing' of the South Central Sewer on the Hughes Parcel; or (2) the extension of the South Central Sewer to provide sanitary sewer service to properties outside the Tributary Area, except for those properties specifically noted in Section II.A.9 of the Sewer Agreement, all of which are more specifically defined herein and in Plaintiff's complaint."
 {¶ 14} The trial court denied such motion as memorialized in a Judgment Entry filed on February 24, 2005, finding that appellant had "failed to file a certification of notice to opposing parties describing all efforts taken to notify the other parties or their counsel of the filing of the motion, and had failed to post security, either by surety bond or cash, as required by Civ.R. 65."
 {¶ 15} Thereafter, on March 4, 2005, appellee filed a counterclaim in the original action (Case No. 04-CVH-06-0433) requesting a declaration that it be permitted to use the South Central Sewer to provide "temporary" service to residents residing outside of the Tributary Area until such time as the Southeast Highlands Sewer was completed, which appellee estimated would occur within two or three years. Such residents are owners of property in the Glenross Property. Appellee also sought an injunction barring appellant from interfering with appellee's attempts to provide temporary sewer access to the Glenross Property.
 {¶ 16} Pursuant to a Judgment Entry filed on March 8, 2005, Case Nos. 04CVH-006-433 and 05CV-H-02-146 were consolidated and a hearing on appellee's Motion for Preliminary and Permanent Injunctive Relief was scheduled for March 15, 2005.
 {¶ 17} On March 11, 2005, appellee filed a Motion to Dismiss appellant's complaint for injunctive relief and damages pursuant to Civ.R. 12(B)(6).
 {¶ 18} Thereafter, the matter proceeded to a trial to the court on March 15, 2005, on appellee's counterclaim for declaratory judgment and permanent injunction in the original action (Case No. 04-CVH-06-433) and appellant's complaint for permanent injunction and appellee's Motion to Dismiss appellant's complaint in the second action (Case No. 05CVH-02-146). At the trial, the parties stipulated to the admission of certain exhibits, including the Sewer Agreement.
 {¶ 19} Pursuant to an Order filed on March 23, 2005, the trial court denied appellant's motion for reconsideration or, in the alternative, for a nunc pro tunc order of the trial court's February 2, 2005, Judgment Entry dismissing counts one through four of appellant's amended complaint.
 {¶ 20} Via a Judgment Entry filed on May 13, 2005, the trial court found in favor of appellee on its counterclaim for declaratory judgment and its counterclaim for permanent injunction and also dismissed appellant's second action. The trial court, in its entry, also held that appellee could "temporarily" provide sewer service to the Glenross or Grady Memorial properties, which were outside the Tributary Area, without being in breach of the Sewer Agreement and that appellant was prohibited from interfering with such temporary use.
 {¶ 21} On May 20, 2005, appellant filed a Notice of Voluntary Dismissal, dismissing all of his remaining claims without prejudice.
 {¶ 22} Appellant now raises the following assignments of error on appeal:
 {¶ 23} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WHEN, CONSTRUING THE PLEADINGS MOST FAVORABLY TO PLAINTIFF AND ASSUMING ALL FACTUAL ALLEGATIONS IN THE COMPLAINT AS TRUE, PLAINTIFF STATED A VIABLE CAUSE OF ACTION FOR BREACH OF CONTRACT.
 {¶ 24} "II. THE TRIAL COURT ERRED BY FAILING TO INTERPRET THE CONTRACT BETWEEN PLAINTIFF AND DEFENDANT ACCORDING TO THE CLEAR AND UNAMBIGUOUS LANGUAGE EMPLOYED IN THE AGREEMENT AND REVISING THE PARTIES' CONTRACT TO PERMIT A `TEMPORARY USE' OF THE SOUTH CENTRAL SEWER."
 I {¶ 25} Appellant, in his first assignment of error, argues that the trial court erred in granting appellee's Motion to Dismiss appellant's First Amended Complaint pursuant to Civ.R. 12(B)(6) since appellant stated a viable cause of action for breach of the Sewer Agreement. We disagree.
 {¶ 26} Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. Perrysburg Township v. city of Rossford,103 Ohio St.3d 79, 81, 814 N.E.2d 44, 2004-Ohio-4362. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint.State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.,65 Ohio St.3d 545, 605 N.E.2d 378, 1992-Ohio-73. Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. Byrd. v. Faber (1991), 57 Ohio St.3d 56,565 N.E.2d 584. In order for the trial court to dismiss a complaint pursuant to Civ.R. 12(B)(6), the court must find beyond a doubt that the plaintiff can prove no set of facts that would support his claim for relief. O'Brien v. Univ. Community TenantsUnion (1975), 42 Ohio St.2d 242, 327 N.E.2d 753.
 {¶ 27} At issue in the case sub judice is whether the Sewer Agreement permitted appellant to provide sewer service to anyone outside of the Tributary Area and whether, if so, appellee thwarted such right.
 {¶ 28} The Sewer Agreement states, in Paragraph II.A.9 as follows:
 {¶ 29} "In the event that any Owner who is a part of this Agreement acquires land contiguous to previously purchased property they own within the existing tributary area, and the acquired land is annexed to the City and furthermore it is demonstrated the proposed sanitary trunk sewer has residual capacity sufficient to serve the acquired land and the elevations are such that gravity sanitary sewer service can be extended to serve the acquired land, then the acquired land may become a part of the tributary area and may be added to the Owner's existing subdivision or development."
 {¶ 30} While appellant contends that the above language grants him the right, as an "Owner who is part of this Agreement," to use the South Central Sewer to service property Owners who reside outside of the Tributary Area, appellee disagrees.
 {¶ 31} We find that the trial court properly granted appellee's Motion to Dismiss appellant's First Amended Complaint pursuant to Civ.R. 12(B)(6) since appellant has failed to state a claim upon which relief can be granted. As noted by the trial court in its February 3, 2005, Judgment Entry, appellant "has failed to establish, or even allege [in his First Amended Complaint], the existence of an acquired property that the [Appellant] wishes to include in the Tributary Area." (Emphasis added). Pursuant to the clear language in Paragraph II.A.9 of the Sewer Agreement, the Owners (including appellant) had a limited right to extend sewer service beyond their original land. Such paragraph, however, required such an Owner to acquire land that was contiguous to property such Owner already owned inside the Tributary Area. Appellant did not allege in his complaint that he had done so and also did not even allege the existence of property that he wished to include in the Tributary Area. As noted by appellee, "[n]othing in this section contemplates or permits the Owners to secure fees from other property ownersoutside the Tributary Area." Therefore, the above terms were not triggered. With respect to appellant's claim that the trial court should not have dismissed his claim for anticipatory breach of the sewer agreement, we further note that appellant never asserted such a claim in any complaint that he filed.
 {¶ 32} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 33} Appellant, in his second assignment of error, argues that the trial court erred by failing to interpret the Sewer Agreement between the parties according to its clear and unambiguous language and by revising the agreement to permit a "temporary use" of the South Central Sewer.
 {¶ 34} Generally, a trial court is required to presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Shifrin v. Forest CityEnt., Inc., 64 Ohio St.3d 635, 638, 597 N.E.2d 499,1992-Ohio-28, citing Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus;Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 544 N.E.2d 920, syllabus. Only when the contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Id., citing Kelly at 132. When the terms of a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,246, 374 N.E.2d 146.
 {¶ 35} At issue in the case sub judice is the trial court's interpretation of the following language contained in Section 9 of the Sewer Agreement: "This extension of sanitary sewer service to lands beyond the current boundaries of the tributary area shall only be available to the Owners for fifteen (15) years from the date of formal acceptance of the sanitary trunk sewer as a Public Improvement by the City and also at any time to the Cityto service existing structures on lands contiguous to thetributary area and to public and semi-public facilities on landsnot adjacent to the Tributary Area such as the Delaware CountyJoint Vocational School South Campus and Camp Lazarus so long asthe facilities remain for public and semipublic use." (Emphasisadded).
 {¶ 36} As is stated above, appellee negotiated with the owners of the Glenross and Grady Memorial properties, which are located outside of the Tributary Area, and, in pre-annexation agreements, promised use of the South Central Sewer to such properties. Appellant maintains that, by doing so, appellee was in violation of the above paragraph since the Glenross and Grady Memorial Properties did not contain "existing structures. . . ." and also were not "public and semi-public facilities . . ."
 {¶ 37} The trial court, in the case sub judice, found that nothing in the above language of the Sewer Agreement prohibited appellee from "temporarily" using the South Central Sewer to service the Glenross and Grady Memorial Properties "so long as doing so does not prevent the Owners from permanently connecting to the South Central Sewer within the fifteen (15) year period designated in the Agreement."[1] We agree. The above language contemplates that appellee shall have the right topermanently extend sewer service to "service existing structures on lands contiguous to the tributary area and to public and semi-public facilities on lands not adjacent to the Tributary Area such as the Delaware County Joint Vocational School South Campus and Camp Lazarus so long as the facilities remain for public and semipublic use." There is no limiting language in the Sewer Agreement prohibiting appellee from temporarily using the South Central Sewer to service such properties until the Southeast Highland Sewer was completed.
 {¶ 38} We further note that, at the hearing before the trial court, the parties stipulated that appellee had acquired full ownership of the South Central Sewer in accordance with Section II.A.5 of the Sewer Agreement. On March 8, 2004, Resolution No. 04-06 was passed. Pursuant to such resolution, appellee accepted the South Central Sewer as a public improvement. Appellee, as a result of such resolution, is now the absolute owner of the sewer. We concur with the trial court that appellee's temporary use of the South Central Sewer was in accordance with its ownership rights and, furthermore, was not prohibited by the express language in the Sewer Agreement.
 {¶ 39} Based on the foregoing, appellant's second assignment of error is overruled.
 {¶ 40} Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.
By: Edwards, J. Wise, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The Sewer Agreement, in Section II A. 9, stated in relevant part, that "[t]he capacity of the Owners shall be assured and protected by the City for a period of fifteen (15) years from the date of formal acceptance of the sanitary trunk sewer as a public improvement by the City."